The Toledo, Wabash and Western Railway Co. *v.* Brannagan, Adm'x.

---

No. 7782.

THE TOLEDO, WABASH AND WESTERN RAILWAY CO. *v.* BRANNAGAN, ADMINISTRATRIX.

CONTRIBUTORY NEGLIGENCE. — *Pleading.* — *Complaint.* — *Railroad.* — In an action against a railroad company for injuries to plaintiff's intestate, caused by his falling into a culvert constructed by the defendant under its track in a public street of a city, and by defendant negligently permitted to remain open and uncovered, a complaint which avers that the intestate, "while exercising due and reasonable care and without his fault or negligence on his part," fell into and through the opening in the culvert, sufficiently alleges that he was not guilty of contributory negligence.

The Toledo, Wabash and Western Railway Co. *v.* Brannagan, Adm'x.

SAME.—*Highway.*—*Knowledge of Defect.*—*Reasonable Care.*—Knowledge·
of the existence of a dangerous defect in a highway makes it incum-
bent on the traveller to use care and caution proportionate .to the danger·
which he knows lies in his way; but knowledge will not overcome an
explicit averment of reasonable care and prudence.

SAME.— *Evidence.* — Where, on the trial of such action, the evidence:
showed that the intestate lived near the culvert and was familiar with.
its character and location, and no evidence was given to show that he.
was free from contributory negligence, there is an utter failure of proof..

SAME.—*Presumption.*—There is no presumption that one who claims dam-
ages for injuries caused by the negligence of another was himself free:
from fault.

From the Carroll Circuit Court.

*C. B. Stuart*, for appellant.

ELLIOTT, J.—The complaint of the appellee alleges that
the appellant is a corporation owning and operating a line of
railway extending through the city of Delphi ; that the cor-
poration constructed a track across Washington street, a.
public street of said city ; that, in constructing said track
the appellant constructed a drain and culvert under its track
in said street, at a point where the street was crossed by
said track ; that the drain was of the depth of six feet, and.
of the width of five feet ; that appellant negligently per-
mitted a portion of the culvert across said drain to remain.
open and uncovered, leaving an uncovered space of such a.
character as to be dangerous to those who travelled upon
said street ; that the appellee's intestate, Thomas Brannagan,.
while walking along said street at a point where appellant's:
track crosses, and "while exercising due and reasonable care·
and without his fault or negligence on his part," fell into,
and through, the opening in the said culvert and received
injuries from which he died.   It is fairly inferable from the·
allegations of the complaint that the deceased knew of the·
dangerous place in the highway, and that he had many times
passed and repassed the spot near the opening in the culvert.
which made the street unsafe.

It is contended that the complaint is bad, because it shows the deceased went upon the highway with full knowledge of the existence of the dangerous culvert, and that he was therefore guilty of contributory negligence. It is undoubtedly true as counsel assert, in language borrowed from a very old case, that "a man must not cast himself upon an obstruction, which has been made by the fault of another, and to avail himself of it, if he do not himself use common and ordinary caution to be in the right." But the rule expressed in the quotation we have made, does not go to the extent of holding that knowledge of the existence of a dangerous defect in a highway requires a traveller to keep off the highway altogether. If the danger of passing is so great that a man of ordinary prudence, possessing knowledge of its existence, would not attempt to pass it, then it might perhaps be contributory negligence for one acquainted with the location and character of the dangerous spot to attempt to pass in close proximity. Knowledge that there is a defect in a highway, making it dangerous to attempt to travel upon it, does not of itself, make it negligence to use the highway carefully and cautiously. Knowledge of the existence of a dangerous place does, however, make it incumbent upon the traveller to use care and caution proportionate to the danger which he knows lies in his way. The fact that the injured person had knowledge of the dangerous condition of the highway is always an important matter for consideration, but it is not always sufficient to establish contributory negligence. *Clayards* v. *Dethick*, 12 Q. B. 439 ; *Reed* v. *Northfield*, 13 Pick. 94 ; *Humphreys* v. *Armstrong County*, 56 Pa. St. 204 ; *Hutton* v. *Corporation of Windsor*, 34 U. C. Q. B. 487 ; *Whittaker* v. *Inhabitants of West Boylston*, 97 Mass. 273. The fact that the complaint shows that the appellee's intestate knew of the dangerous place in the street is not sufficient to overcome, or make nugatory, the explicit averment that the said intestate did exer-

cise reasonable care and prudence, for it may well be true that he did exercise such prudence and care, although he had full knowledge of the dangerous defect in the street. There was no error in overruling the demurrer to the complaint.

The evidence showed that appellee's intestate lived about two hundred yards distant from the culvert where appellee alleges he received the injuries which caused his death; that he left his home some time between six and seven o'clock on the evening of the accident; that he returned between seven and eight; that immediately upon his return he complained of his left side; that physicians were sent for; that the pain was so great that the physicians were unable to make an examination, and that the deceased died about nine o'clock the same night. The only evidence showing, or tending to show, how the deceased received the injury from which he died, is that of Mary Brannagan, Jerry Dillon, Mary Dailey and the physicians. Mary Brannagan says she gave Jerry Dillon the shoes of the deceased, and Jerry testified: "I work at the boot and shoe trade; I went to the culvert in question about an hour after Brannagan's death; I found tracks in the culvert and measured them, and compared the measure with a pair of shoes I got at the house: they seemed to agree; the bottom of the culvert was sand and clay mixed; I saw other marks that looked like hand marks, but I can not say." Mary Dailey testified that she was on the street on the night of Brannagan's death; that, when not far from the railroad track on her way home, she heard some one cry out in pain, and thought it sounded like a call for help; and, also, that the cry sounded as if it came from the culvert. The physicians testified as to the death of Brannagan, that they made a *post mortem* examination, and that his death resulted from rupture of the spleen. Dr. Richardson said that there was a small mark on the heart of Brannagan; that he could not

say that the infliction of the injury which made the mark caused the rupture, but that it might possibly have done so. In answer to a question of appellee's counsel, as to whether a person falling into a culvert would likely receive such an injury as that which caused Brannagan's death, the witness said : "It might, though not necessarily ; my judgment is, he fell against something."· The testimony of Dr. Smith, who assisted at the autopsy, is substantially the same as that of Dr. Richardson.

It is earnestly argued that the evidence does not show that appellee's intestate fell through the culvert, but we do not find it necessary to decide this question, for we think the evidence is plainly insufficient upon another material point. The deceased knew of the location and character of the culvert. The dangerous place was so situated, with reference to the adjacent parts of the highway, that one acquainted with the culvert and its surroundings might, by exercising ordinary prudence and care, readily have passed the place in entire safety. There is not a syllable of testimony showing what Brannagan was doing, or how he was conducting himself, at the time he received the injury which caused his death. If it be granted that there were circumstances from which it could be inferred that Brannagan did receive his injuries from a fall into appellant's culvert, there are certainly none from which it can be inferred that he was exercising reasonable care. Whatever might be the fair inference, if Brannagan had been unacquainted with the culvert and its surroundings, it can not be inferred, as against the facts that he did have knowledge, and that a man using due care might easily have travelled the highway in safety, that he was free from fault. The mere fact that he actually fell into the culvert, would not, itself, supply evidence that he was at the time he fell exercising reasonable care. There is no presumption that one who claims damages for

injuries caused by the negligence of another was himself free from fault. In *Cordell* v. *The New York, etc., R. R. Co.*, 75 N. Y. 330, it is held, that where one has been killed by the negligence of another, the circumstances must show due care on his part. Where the circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be non-suited. Wharton Negligence, sec. 421. In *Warner* v. *The New York, etc., R. R. Co.*, 44 N. Y. 465, the court used this language: "It is the duty of the plaintiff to prove, and the right of the defendant, who is charged with negligence causing an injury, that he should prove, by satisfactory evidence, that he did not contribute to the injury by any negligence on his part. This proof, in some form, constitutes a part of the plaintiff's case." It can not be presumed that the plaintiff is free from fault.

It is unnecessary, however, to multiply citations, for the rule has been long and firmly settled, in this State, that the evidence must show that the plaintiff, in actions to recover for an injury resulting from the negligence of another, was himself free from contributory negligence. The evidence in this case fails entirely upon this point. There is not simply a conflict of evidence; there is an utter failure of proof. There is neither direct testimony nor circumstantial evidence, tending to prove that the appellee's intestate was without fault.

The court erred in overruling appellant's motion for a new trial.

Judgment reversed, at costs of appellee.