The Chicago and Alton Railroad Company

*v.*

Albert Adler, Admr.

*Filed at Ottawa June 15, 1889.*

1. Negligence—*care required—to avoid injury—ordinary care.* In an action to recover for a personal injury from negligence of the defendant, resulting in death, the burden, in the first instance, is upon the plaintiff to show that his intestate was in the exercise of ordinary care for his personal safety,—that is, the facts and circumstances proved must show that he was in the exercise of such care.

2. What is ordinary care is a relative question, and is to be determined from a consideration of the facts and circumstances surrounding the party required to act. It is that care which a reasonably prudent and cautious man would take to avoid injury under like circumstances. It is to be determined as a question of fact.

3. Same—*care at street crossings.* Whether a person killed at a public street crossing while passing over a railroad track in a buggy, was bound to do more than look for the flagman and observe the absence of any signal of danger in order to have been in the exercise of ordinary care, especially when the view is obstructed, is a question of fact. The flagman's duty is to know of the approach of trains, and to give timely warning to persons attempting to cross the railroad track, and the public have a right to rely upon a reasonable performance of that duty.

4. While the failure of a person attempting to cross a railway track to pause and look for approaching trains may be negligence, as a matter of fact, in a particular case, yet it is manifest that it must at last depend upon the circumstances shown ; and the jury must, in the first instance, say, as a matter of fact, whether it was necessary to the exercise of ordinary care.

5. Same—*negligence as a question of fact.* An instruction telling the jury that if the deceased was warned or notified of the approach of a train at a street crossing, then, as a matter of law, certain acts performed or omitted to be performed by him constituted a want of ordinary care, is properly refused. Whether the deceased should have waited for the approaching train to pass before attempting to cross the track, is a question of fact, to be determined in view of all the attendant circumstances.

6. Instruction—*should be based on the evidence.* An instruction based upon an assumed fact which the evidence fails to show, or does not even tend to prove, should be refused.

129  335
151  556

129  335
52a  99

129  335
46a  447

129  335
53a  78
58a  562

129  335
62a  270
62a  477

129  335
64a  364

129  335
165  94

129  335
69a  189

129  335
78a  594

129  335
81a  153

129  335
90a  7370

129  335
190  5139

7. PRACTICE—*directing what the verdict shall be.* Where the evidence given at the trial, with all legitimate inferences that may be legally and justifiably drawn therefrom, is insufficient to support a verdict for the plaintiff, so that if such a verdict be returned it must be set aside, the court is not bound to submit the case to a jury, but may and should direct a verdict for the defendant.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. GEORGE W. STIPP, Judge, presiding.

Albert Adler, administrator of William Beuck, deceased, brought this action in the Will circuit court, against the Chicago and Alton Railroad Company, to recover damages for the death of the deceased, charged to have been caused by the negligence of the company. The injury of which Beuck died was received at a public crossing in the city of Joliet. Deceased was riding in a top buggy drawn by a single horse, and was passing, at a gentle trot, westward on Fourth avenue. This avenue, extending east and west, is intersected by Eastern avenue, running north-east and south-west at an angle of about forty-five degrees. Four or five tracks of appellant's railroad were laid along Eastern avenue. On the north side of Fourth avenue, and close to the line of Eastern avenue, stood first a scale-house, then a warehouse, and, a little north and east of the latter, a residence. The deceased approached the crossing from the east, the residence, warehouse and scale-house being upon his right, and so situated, as portions of the evidence tended to show, as to cut off a view of approaching trains from the north along the tracks on Eastern avenue. There is evidence also tending to establish the fact, that on the track on the eastern side of Eastern avenue, and extending northwardly from the crossing of Fourth avenue, stood several long box-cars, belonging to a circus company, in such position as to obstruct the view of approaching trains from the north on Eastern avenue, of persons approaching the crossing from the east on Fourth avenue in proximity to the crossing. It

also appears that many persons were in the vicinity, and using this crossing, about the time of the accident; that the deceased approached the crossing, his horse being in a gentle trot, and was struck by a south bound train, while on the crossing, and instantly killed. There is no evidence showing that the deceased stopped, or attempted to do so, until the crossing was reached, or at any point where the collision could have been avoided. There is a sharp conflict in the evidence as to whether a flagman was on duty at that crossing at the time of the collision, several persons testifying that they looked for the flagman in approaching the crossing, and that no flagman was there. On the other hand, it is shown by the flagman and others, that he was at about the center of the crossing, and attempted, by waving his flag, and otherwise, to arrest the attention of the deceased, and give notice of the danger before he reached the street intersection. It was conceded that a flagman was ordinarily stationed at this crossing, and had been for a considerable time before this occurrence, and it also appears that the deceased had, for many years, lived in the city, engaged in the butcher business. There is also a sharp conflict in the evidence as to whether any signal of the approach of the train was given, by the ringing of a bell or sounding the whistle. Verdict and judgment in favor of plaintiff for $2400, which, upon appeal to the Appellate Court, was affirmed. The railroad company prosecutes this further appeal.

Messrs. Brown & Kirby, for the appellant:

The court should have instructed the jury to find for the defendant. *Simmons* v. *Railroad Co.* 110 Ill. 340.

It is essential in these cases for the plaintiff to prove that he was in the exercise of ordinary care to avoid injury, and the absence of such proof, or facts from which it could be inferred by the jury, is fatal to the cause of the plaintiff, upon whom the burden of proof rests as to that fact. *Railroad Co.* v. *Martin*, 115 Ill. 370.

22—129 Ill.

In cases where danger is reasonably to be apprehended, proof of positive or special care must be made. (*Railroad Co.* v. *Olson,* 12 Bradw. 245.) There being a total absence of any proof of this essential element to a cause of action, the case should not have been submitted to the jury.

The second of appellant's instructions should have been given, as there was evidence upon which it was based, and it in no way invaded the province of the jury, and it asserted a correct rule of law. *Railroad Co.* v. *Dimick,* 96 Ill. 42; *Railroad Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Railroad Co.* 114 id. 615; *Railroad Co.* v. *Damerell,* 81 Ill. 450.

On approaching a railroad a traveler must use his eyes and ears, and must avoid danger if he can, notwithstanding the negligence of the company. *Henze* v. *Railroad Co.* 71 Mo. 636; *Purl* v. *Railroad Co.* 72 id. 168; *Railroad Co.* v. *Hatch,* 79 Ill. 137; *Pennsylvania Co.* v. *Rudel,* 100 id. 603.

The conclusion from all the cases is, that if one goes upon a track without taking the necessary precautions to ascertain whether there is an approaching train or not, he is guilty of gross negligence, and he can not recover. *Railroad Co.* v. *Heileman,* 49 Pa. St. 60; *Railroad Co.* v. *Beale,* 73 id. 504; 1 Rorer on Railroads, chap. 17, sec. 7, p. 535.

The burden of proof in this case rested upon the plaintiff to prove, not only that defendant omitted to sound a whistle or ring a bell, but also to show that he himself was in the exercise of care and diligence at the time of the accident. *Railroad Co.* v. *Damerell,* 81 Ill. 454, and cases there cited.

Messrs. Haley & O'Donnell, for the appellee:

Whether or not a party is guilty of negligence in not looking out for an approaching train, is a question of fact, for the jury; and where there is evidence tending to establish the facts relied on for a recovery, the verdict must stand. The question of negligence is a question of fact, for the jury. *Railway Co.* v. *O'Conner,* 115 Ill. 254; *Railway Co.* v. *Carey,* id. 115.

Where there is evidence tending to show that a crossing is of a dangerous character in a populous place, and that the injury was caused by the rapid running of a train therein, a verdict for plaintiff will not be disturbed. *Railroad Co.* v. *Payne,* 59 Ill. 534.

The persons in charge of a train are presumed to be cognizant of the character of a crossing, and that persons are liable at all times to be in the act of passing. *Railroad Co.* v. *Stables,* 62 Ill. 313.

Where a railroad company is not restricted by law to any rate of speed, unusual speed at crossings where men or animals are generally exposed to danger, may be considered with other matters, as, a failure to give signals, etc., to determine the want of proper care. 2 Thompson on Negligence, 418, note 9.

A railroad company should not permit obstructions upon its right of way, near a crossing, which will prevent the public from observing the approach of trains. *Railroad Co.* v. *Hillmer,* 72 Ill. 235.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court :

The first ground for reversal insisted upon is, "the court erred in refusing to give the first, second and third instructions for defendant." The first instruction referred to is as follows :

"The jury is instructed, that under the law as applied to the facts of this case, as developed by a consideration of all the evidence, the plaintiff is not entitled to recover, and the jury will so find."

The rule is, that where the evidence given at the trial, with all legitimate inferences that may legally and justifiably be drawn therefrom, is insufficient to support a verdict for the plaintiff, so that if such a verdict be returned it must be set aside, the court is not bound to submit the case to a jury, but may and should, in such case, direct a verdict for the defendant. *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340.

To determine the question presented by the refusal of the instruction quoted, some slight consideration of the evidence will be necessary. It is said by counsel for appellant, that the grounds rendering it proper to be given were, that there was no evidence that the deceased was in the exercise of ordinary care to prevent the injury; and, on the contrary, it is said the evidence shows that he was grossly negligent. It is to be conceded that the burden, in the first instance, is upon the plaintiff to show that his decedent was in the exercise of ordinary care for his personal safety,—that is, the facts and circumstances proved must show that he was in the exercise of such care. (*Calumet Iron and Steel Co.* v. *Martin*, 115 Ill. 373.) What is ordinary care is always a relative question, and is to be determined from a consideration of the facts and circumstances surrounding the party required to act. It was said in *Chicago, St. Louis and Pittsburg Railroad Co.* v. *Hutchinson*, 120 Ill. 587, that the true test and criterion to determine what is ordinary care, is that care which a reasonable, prudent and cautious man would take to avoid injury, under like circumstances; and in numerous instructions given in this case on behalf of appellant, the like rule and test were announced to the jury.

The question is also to be determined as a question of fact, under all the attending circumstances. (*Pennsylvania Railroad Co.* v. *Frana*, 112 Ill. 405, and *supra.*) There is here evidence tending to show that a flagman was stationed and usually kept at this crossing, and also, it might be legitimately inferred by the jury, from the facts shown, that the deceased was familiar with the crossing, and with the operation and management of appellant's company at that point. It is also shown, that just prior to the collision resulting in the death, the deceased approached this crossing from the east, in a top buggy drawn by a single horse, and at a rate of speed indicated by a slow or gentle trot; that at the time of such approach, the view to the north,—the direction from which the

train came,—was obstructed by intervening buildings and by cars standing upon appellant's tracks. There was also evidence which, if believed by the jury, clearly establishes the fact that no flagman was on duty at that crossing at that time. Persons immediately at the side of the deceased just before the collision, going in the same direction, and who were but a few feet behind him when he was struck, testify that they looked for the flagman and for signals of danger, and positively testify that no flagman was on duty, or any signal given. Whether the deceased was bound to do more than look for the flagman and observe the absence of any signal of danger, to be in the exercise of ordinary care, was necessarily a question of fact. In the *Hutchinson case*, before cited, it was said: "We are not prepared to say, as a matter of law, that a person approaching a railroad crossing where there is nothing apparent to warn him of danger, and at which he knows a flagman was stationed whose known duty is to warn all persons of danger from running trains, is required to look elsewhere than to the flagman. The flagman's duty is to know of the approach of trains, and to give timely warning to all persons attempting to cross the railroad track, and the public have a right to rely upon a reasonable performance of that duty." If the jury believed, that in approaching this crossing the view of any train approaching it from the north was obstructed, it was for them to say whether, from all the circumstances shown, a person in the exercise of ordinary care for his safety,—that is, such care as a reasonable and prudent man would exercise under all the circumstances shown,—would have taken other precautions than those taken by the deceased.

We are aware that this and other courts have repeatedly held, when passing upon questions of law as well as of fact, that it was negligence in a person attempting to cross a railroad not to pause and look for approaching trains. But while that may be true, as a matter of fact, in any particular case, it is manifest that it must at last depend upon the circum-

stances shown; and the jury must, in the first instance, say, as a matter of fact, whether it was necessary to the exercise of·ordinary care. Moreover, this presentation might well be made to the Appellate Court, which is required by law to pass upon the facts, and that may, and should, if the facts are incorrectly found by the jury, reverse for that reason.

In view of the finding of the Appellate and trial courts, we can not say there was no evidence, in respect of the matter being considered, that would sustain the finding of the jury. We are not permitted to look into the facts, except for the purpose of determining whether the law has been correctly applied by the trial court, and if there is evidence upon which the jury might have found that the deceased was in the exercise of ordinary care in attempting to cross appellant's tracks, which, if believed by them, would be sufficient to sustain the verdict, as we have seen there is, we must hold, as we do, that the court properly refused the instruction quoted.

The second instruction was properly refused. If appellant desired to raise the question as to whether the deceased was warned or notified of the approach of the train, it should have submitted the question of fact to the jury. The instruction, as asked, told the jury, that if the deceased was warned, then, as a matter of law, certain acts performed or omitted to be performed by him constituted a want of ordinary care. Whether the deceased should have waited for the train of cars to pass before attempting to cross the track, was a question of fact, to be determined in view of all the attendant circumstances, and was thus properly submitted to the jury by instructions given on behalf of the defendant itself. It was not error to refuse the second and third instructions asked by appellant, the third instruction being in all material respects the same as the second.

Appellant also asked the court to instruct the jury, "that if they shall believe, from the evidence, that at the time of the accident alleged, the deceased, in approaching the track of the defendant, stopped his horse at sight of the coming train, and

then calculated the chances of his ability to cross without danger from the approaching train, and, acting upon his judgment, proceeded to cross the track in front of the train, and, in so doing, miscalculated, and was struck by the train, resulting in his death, then the plaintiff can not recover, and the jury will so find,"—which the court modified by striking out all after the words, "resulting in his death," and inserting the words, "and then, if the jury shall believe, from the evidence in the case, that such conduct was not, under the circumstances, the exercise of ordinary care, the jury must find for the defendant," and gave the same as modified. The instruction, as asked, should have been refused. A careful consideration of the evidence fails to disclose any state of facts upon which it could have properly been predicated. It is undoubtedly the law that either party may ask instructions based upon any theory supported by evidence in the case. But a most careful scrutiny, not only of the abstract, but of the record itself, fails to show that the deceased "stopped his horse at sight of the coming train," or that the horse he was driving stopped at any point where the injury could have been averted, nor is there evidence from which such an inference can be fairly drawn; nor can it be said that there is evidence tending to support the theory that the deceased stopped his horse before reaching the railroad crossing, and calculated the chances of his ability to cross without injury. The modification submitted to the jury the question whether the supposed facts constituted negligence. The giving of the instruction in this form, while erroneous for the reasons before indicated, could not have prejudiced appellant.

It is next urged that the court erred in giving instructions for appellee. We have examined plaintiff's series of instructions with care, and are of opinion that the law, as applied to the facts in this case, was stated with substantial accuracy. Moreover, by the fifth to the seventeenth of appellant's series of instructions given, the doctrine of negligence applicable to

the facts contended for by the parties was fully and accurately stated. No good purpose would be subserved by extending this opinion in the discussion of the five instructions given on behalf of appellee. As before said, they are not subject to the criticism attempted to be made thereon.

The remaining questions pressed by counsel relate exclusively to matters of fact. All such questions have been settled by the judgment of the Appellate Court; and while there is much seeming force in many of the suggestions of counsel, and the case is extremely close in its facts, if the right of plaintiff to recover is not very doubtful, it is sufficient to say that the determination of the Appellate Court in respect thereof is conclusive upon us, and finding no error of law, its judgment must be affirmed.

*Judgment affirmed.*