# Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Charles H. Baddeley, Administrator, etc.

1. NEGLIGENCE—*What the Plaintiff Must Prove.*—In actions for the recovery of damages resulting from negligent acts, it is incumbent upon the plaintiff to show, first, that the defendant was negligent, as alleged in the declaration; second, that the deceased was then and there exercising ordinary care.

2. · RAILROADS—*Speed of Trains—When Negligent.*—Within the limits of cities and towns, to run a train at a greater rate of speed than is allowed by ordinance, is legal negligence.

3. INSTRUCTIONS—*Erroneous—When Not Reversible Error.*—The Appellate Court will not reverse a judgment for an error in an instruction when the verdict upon the point in question is right.

4. ORDINARY CARE—*A Question for a Jury.*—In actions for personal injuries it is a question for the jury to determine whether the plaintiff used such care as might be expected of an ordinarily prudent person.

5. NEGLIGENCE—*A Question for a Jury.*—In actions for damages resulting from acts of negligence, the question as to whether the defendant has been guilty of negligence is a question of fact for the jury.

6. INSTRUCTIONS—*Omission in One may be Cured by Another.*—Where an omission in one instruction is cured in others given, it is the settled rule not to reverse for this cause.

7. NEXT OF KIN—*The Husband is, of the Wife.*—Under the statute which provides for damages sustained by the widow and next of kin, the husband of a deceased wife, whose death is the result of negligent acts, may maintain the action.

Memorandum.—Action for damages resulting from negligent act. Appeal from the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed November 27, 1893.

The opinion states the case.

APPELLANT'S BRIEF, GEO. W. GERE, ATTORNEY; JNO. T. DYE F. Y. HAMILTON AND EVENS WOOLLEN, OF COUNSEL.

Plaintiff's intestate in making the unsuccessful attempt to cross in front of the locomotive engine, which she saw and knew was coming, when she could have remained at the side of the track with perfect safety, was guilty of such contributory negligence that a recovery against appellant can not

C., C., C. & St. L. Ry. Co. v. Baddeley.

be sustained. T. W. & W. R. R. Co. v. Jones, 76 Ill. 311; St. L. A. & T. H. R. R. Co. v. Manley, 58 Ill. 300; T. P. & W. Ry. Co. v. Riley, 47 Ill. 514; C. & A. Ry. Co. v. Jacobs, 63 Ill. 178; Abend v. T. H. & I. Ry. Co., 111 Ill. 202; C. & A. R. R. Co. v. Gretzner, 46 Ill. 75; Railroad Co. v. Houston, 95 U. S. 697; Scofield v. C. M. & St. P. R. R. Co., 114 U. S. 615; Penn. R. R. Co. v. Aiken, 41 Am. & Eng. 572; Keeley v. H. & St. J. R. R. Co., 13 Am. & Eng. 638–41–2; State of Maine v. Maine Cent. R. R. Co., 19 Am. & Eng. 314; Kwiotkowski v. Chi. & G. T. Ry. Co., 38 N. W. Rep. 463; Korrady v. L. S. & M. S. Ry. Co. (Ind.), 29 N. E. Rep. 1069; Little Rock & Ft. S. Ry. Co. v. Dinsman, 16 S. W. Rep. 169; L. S. & M. S. R. R. Co. v. Sunderland, 2 Brad. 307.

Under the laws of Illinois the husband is not a beneficiary in this class of cases, he not being next of kin to his wife. R. S., Starr & Curtis, 1290, Sec. 2; Dickens v. N. Y. Cent. R. R. Co., 23 N. Y. 158; Drake, Adm. v. Gilmore et al., 52 N. Y. 389; Townsend et al. v. Radcliffe, 44 Ill. 446; Gauch v. St. L. M. S. Ins. Co., 88 Ill. 251; 1 Bouvier's Law Dic., "Kindred," 691; Anderson's Law Dic. "Kin," 589; Haraden v. Larrabee, 113 Mass. 431; Wetter v. Walker, 62 Ga. 145; R. R. Co. v. Winn. 42 Ga. 331; Lovett v. R. R. Co., 55 Ga. 143.

APPELLEE'S BRIEF, KERRICK, LUCAS & SPENCER, ATTORNEYS.

The point in appellant's brief is that "under the laws of Illinois, the husband is not a beneficiary in this class of cases, he not being next of kin to his wife." A number of cases are cited supporting that contention. Were the question an open one in this State, it would seem somewhat doubtful and uncertain on the authorities cited by appellant. But it is not an open question in this State. The Supreme Court, in the case of The City of Chicago v. Major, 18 Ill. 359, have settled the question; and the very question suggested by counsel of appellant, is anticipated in that case by the Supreme Court. Justice Caton, speaking for the court, says: "Should we adopt the construction contended for, we should have to hold that no remedy is given to the husband for the

loss of the wife. We can not believe that the legislative mind was. actuated by such narrow and limited intentions when framing the first section of the act, which alone gives the cause for action."

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This action was brought by the appellee as administrator of Emily Humphrey against the appellant, to recover damages for negligently causing the death of the said Emily Humphrey.

The plaintiff recovered a verdict of $4,000, of which the sum of $1,500 was remitted, and judgment was rendered for $2,500, from which the present appeal is prosecuted.

The declaration averred that the death was caused by reason of the negligence of the defendant in the management and running of a certain locomotive over the road of defendant, whereby the said locomotive ran upon and struck the said deceased, who was then attempting to cross the track, and who was then exercising ordinary care.

Upon the trial the defendant offered no evidence, and rested on that offered by the plaintiff, insisting then, as it does now, that no sufficient cause of action was disclosed by the plaintiff's proof.

In order to recover, it was incumbent upon the plaintiff to establish:

1st. That the defendant was negligent, as alleged in the declaration.

2d. That the deceased was then and there exercising ordinary care.

By the errors assigned, the appellant calls upon us to determine whether the evidence is sufficient to support the verdict, judging of the same according to the well recognized rules applicable in a court of appellate jurisdiction, when considering a judgment brought before it for review.

It appears that the appellant's line of railroad passes through the city of Leroy, in McLean Co., the general direction being from the southeast to the northwest. At the intersection of Center street, which runs east and west, with

C., C., C. & St. L. Ry. Co. v. Baddeley.

Buck street, which runs north and south, there is a crossing over the railroad, at grade, for both streets, with a sidewalk crossing for foot passengers. The deceased and her sister, Mrs. Richards, were walking along the sidewalk on Center street, going west, and as they came near the track they observed a train, as they supposed, approaching from the northwest. Mrs. Richards asked the deceased whether there would be time to cross, and the latter replied: "Yes, plenty; it is way beyond the depot." They were then on the side track, which was but a few feet from the main track. Mrs. Richards says they then quickened their speed somewhat, and passed on to the main track, and just as she stepped over the west rail she looked around and saw the engine was near them and coming very rapidly. She escaped, but the deceased, who was upon her left, was caught and carried by the side of the engine some distance, causing her death within a very few moments.

As to the alleged negligence of the defendant; the supposed train proved to be a locomotive, with no cars attached, passing from northwest to the southeast. It was running at a very high rate of speed. By the municipal ordinance then in force, the legal rate of speed was fixed at fifteen miles per hour. It is a matter of opinion, merely, as to the actual speed. Some of the witnesses place it at fifty miles per hour—others at forty—one says twenty-five or thirty when he first saw it after the deceased had been struck—others say over fifty, and others who do not attempt to fix the rate in miles per hour, use various forms of expression—for instance, one says it was going faster than he had ever seen a train or an engine go before; another says "it went by like a flash;" another that it went "as though shot out of a gun." And it appears that after striking the deceased, it ran nearly a quarter of a mile before it was stopped. The speed, being in excess of that allowed by the ordinance, was illegal, and this was negligence, as a matter of law. It was unnecessarily and unusually high, and it might perhaps be said under the circumstances to be so reckless as to amount to gross negligence.

We are not unmindful that railroads have the right to make such speed as they may deem necessary, having due regard for the safety of passengers and of persons who may have occasion to cross the track, except so far as controlled by municipal ordinances, and that the public demand for rapid transit seems to compel very high rates of speed for more or less through traffic on all railroads.

Yet, the speed may be so great as to amount to negli-. gence, when all the circumstances are taken into consideration.

When such trains are run with proper care in the matter of giving signals, and when not controlled by local ordinances, they may, perhaps, pass through towns and cities at the rate of forty or fifty miles per hour without being subject to the imputation of negligence. In such case there is a seeming necessity, or at least justification, for the high speed, and there is no violation of municipal ordinance involved. Certainly, we could not say as matter of law, that such speed would, under such circumstances, be negligence *per se*. Here, however, there was a violation of law. The ordinance fixed the rate reasonably and was a valid regulation.

Moreover, there appears to be no justification for such a speed at such a place for a mere locomotive and tender; *prima facie*, it is unnecessary and reckless. It involves risk and hazard to life and property without occasion and should be condemned as clearly, if indeed not grossly, negligent. In this connection, and to avoid repetition, we may notice the objections urged to the first and third instructions given at the instance of the plaintiff. As to the first, it is said that it assumes the defendant was negligent in the matter alleged in the declaration. We think it does not so assume, but rather states the alleged negligence as hypothetical.

As to the third, it is urged that it singles out the specific fact that the speed was in excess of the rate fixed by ordinance, and thereby calls the attention of the jury specifically to that feature of the case. Conceding that these instructions are faulty in the respects urged, yet we ought not to reverse for such cause when we are bound to say that upon

this point of the defendant's negligence, the verdict was right. Indeed, we must say that no other conclusion on this point was justified by the evidence. Hence, it is wholly immaterial whether these instructions are obnoxious to the objections urged.

Assuming then, as we do, that there was sufficient evidence of negligence on the part of defendant, it remains to inquire whether upon the point of the care, or want of care, of the deceased, the verdict is so far opposed to the evidence as to require the interference of this court. Counsel argue that deceased saw the locomotive; knew it was coming toward the crossing, and that, in voluntarily attempting to cross in front it, she was guilty of such negligence as precludes recovery.

It is urged with much vigor that it has often been said, judicially, that such conduct is negligence in and of itself.

No doubt it has often been so declared in the opinions of courts of last resort, by way of argument and as applied to the case under immediate consideration. Such expressions are not infrequent in the reports of the Supreme Court of this State. But it is also and equally true that, in this State, at least, negligence is a question for the jury, and that the court would not instruct that a particular act of failure to look or listen for an approaching train, or of attempting to cross in front of a train, is *per se* negligence. Any such act, not being in violation of legislative or municipal enactment, is not necessarily negligent, and is not to be so declared by the court to the jury.

The fallacy of appellant's argument is in the assumption that, because the deceased knew the engine was approaching she was necessarily negligent in attempting to cross in front of it.

Manifestly it was a question for the jury to determine whether she used such care as might be expected of an ordinarily prudent person. Penn. Co. v. Frana, 112 Ill. 398; C., St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 587; C. & A. R. R. Co. v. Adler, 129 Ill. 335.

It is true, as a general proposition, that in the exercise of

ordinary care, a person will not go upon a railroad track without taking the precaution to ascertain whether a train is approaching, and if a train is seen approaching, ordinary prudence will forbid attempting to cross in front of it, when it is dangerously near, or indeed so near as to induce a calculation of chances. But if the train is so far away as that it is apparently safe to cross one may prudently attempt to do so. If, for instance, it is a mile away, there would be no imprudence in the act. If the distance is a half mile or a quarter of a mile or even less, still it must be a pure question for the jury whether, under the particular circumstances, the act was prudent. The circumstances must be taken into account, and if they are such as to mislead or deceive an ordinary person as to the speed or distance of the coming train, due allowance should be made therefor in estimating the action of the person injured. In the present case the deceased did see the engine approaching; she thought it was at a point beyond the depot, some six or seven hundred feet from the crossing where she was. The situation was such that she was facing the engine, or nearly so, and therefore she might have been mistaken as to its distance and might more easily have been mistaken as to its rate of speed.

If she was not mistaken as to the distance (and we learn what she thought about it as well as what Mrs. Richards thought, from the testimony of the latter, as to which there is no positive or direct contradiction), then it is probable the speed was considerably more than fifty miles per hour. But whether mistaken or not, it is difficult to see upon what ground we shall say that the jury could not reasonably find that the deceased, under all the circumstances, acted as any ordinarily prudent person would. The very high rate of speed is sufficient to account for the mistake of the deceased in supposing she could safely get across.

She was familiar with the locality, and as she told her sister, she had narrowly escaped at that point once before. She thought there was ample time, and they somewhat quickened their pace. It does not appear that the engineer gave warning of his dangerous proximity, nor is it indeed proved

that he saw them; but it was his duty to keep a lookout and it is hardly credible that he did not see them in time to sound the whistle.

We are not disposed to say that the finding of the jury upon the question of the care shown by deceased is so far opposed to the evidence as to justify a reversal for that ground. If the speed was so much greater than it should have been, and as from the standpoint of the deceased it appeared to be, then the mistake she made was caused by the negligent conduct of the defendant, and it is not for the latter to set up such mistake as a bar to recovery.

After a careful consideration of the matter we feel content to rest upon the verdict as to this branch of the case.

It is urged that the second instruction for plaintiff failed to state as essential to recovery that the deceased used ordinary care.

Assuming that this instruction is so faulty we find that the first, second and third, for plaintiff, contain this qualification, and that it is plainly and strongly stated in no less than seven different instructions given for the defendant. There is no conflict in the instructions, but only an omission in one which is amply cured in others given for the plaintiff as well as the defendant, and when this appears it is the settled rule not to reverse for this cause. It was so held in Willard v. Swansen, 126 Ill. 381, as it had been held before and has frequently been held since.

It is further objected that the fourth instruction for the plaintiff authorized the jury to allow "proper pecuniary compensation for damages to the husband and next of kin," and that the jury were not confined to the statutory rule which permits only a fair and just compensation with reference to the pecuniary injuries resulting from such death.

Possibly the instruction might be deemed somewhat uncertain and the jury might not understand that they could allow nothing beyond compensation for pecuniary loss (though probably there would have been no misconception on this point), had it not been aided and supplemented by others; but we find that in at least two given for defendant the rule

of the statute was so plainly set forth that misunderstanding was impossible.

There was proof as to the pecuniary loss sustained by the husband, who, by reason of the peculiar facts proved, was dependent upon the deceased for support.

The verdict of the jury was reduced by remittitur to $2,500 as already stated, and we think the judgment as it stands is not excessive in any view proper to be taken of the evidence.

The point remaining for consideration is that there can be no allowance for damages for the loss sustained by the husband on account of the death of the wife.

In the case of The City of Chicago v. Major, 18 Ill. 359, the Supreme Court had occasion to construe the language of the statute which provided for damages sustained by the "widow and next of kin," and while this precise question was not then involved the court remarked: "Should we adopt the construction contended for we should have to hold that no remedy is given to the husband for the loss of the wife. We can not believe that the legislative mind was actuated by such narrow and limited intentions when framing the first section of the act, which alone gives the cause of action." So far as we are advised this view has been generally accepted by the courts and the profession. While in other States a different view may have prevailed as to the meaning of substantially the same terms in their local statutes, yet we are not inclined to depart from a construction so well recognized and so equitable.

The judgment will be affirmed.