D. CLEGHORN *et al.* v. JOSEPHINE THOMPSON *et al.*

No. 11,884. (64 Pac. 605.)

1. NEGLIGENCE—*Unforeseen Accident.* Negligence, to be actionable, must result in damage to some one, which result, in the absence of wantonness or *malus animus*, might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act.

2. ——— *Allegation and Proof.* An allegation of negligence is not sustained by evidence of acts resulting in damage to another, which result is not the reasonable and ordinary outcome of such acts, and which would not have been foreseen or anticipated by the exercise of ordinary prudence and foresight under all the circumstances of the case.

| 62 | 727 |
| 65 | 397 |

| 62 | 727 |
| 71 | 478 |
| 71 | 480 |
| 71 | 481 |

| 62 | 727 |
| 75 | 228 |

| 62 | 727 |
| 77 | 709 |

| 62 | 727 |
| 79 | 826 |

| 62 | 727 |
| 81 | 299 |
| 81 | 382 |

Error from Rice district court; ANSEL R. CLARK, judge. Opinion filed April 6, 1901. *In banc.* Reversed.

*Prigg & Williams*, for plaintiffs in error.

*Samuel Jones*, and *C. F. Foley*, for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : A firm composed of M. E. Richardson and Samuel Haston was engaged in the meat business in the city of Sterling, and in connection therewith had a slaughter-house and stock-yards on a tract of land a short distance from the town. They had in their employ one D. Cleghorn, who was in charge of the slaughter-house and yards. Upon several occasions dogs had been about the place, causing annoyance and trouble, and Cleghorn had been instructed to kill them if they returned. A Colt's rifle carrying a No. 32 cartridge was in use at the slaughter-house. On the east of the tract of land on which the slaughter-house was located, and about seventy to eighty rods therefrom, was a public highway running north and south, which was traveled generally by people going to and coming from Sterling. To the east and northeast the land rose gradually to the road. From the slaughter-house and pens a portion of this north and south road was visible and a portion was not.

On the morning of the 31st of January, 1898, about nine o'clock, Cleghorn noticed the dogs about the yards. He procured the rifle and discharged it at the dogs, which were then about seventy-five yards to the northeast of where he was standing. The distance to the highway from the same point, and in the direction in which he shot, was between seventy and eighty rods. The land between where the dogs then were and the highway was higher than it was where they were, and so much so that it is spoken of as an embankment. It was of a sandy character. At this time one Joseph Thompson, who was the husband of one of the defendants in error and the father of the others,

Cleghorn v. Thompson.

was passing along the north-and-south road and was then at a point east, or possibly to the southeast, of where Cleghorn stood. Whether or not he was in a position where he might have been seen by Cleghorn does not appear. The ball which was discharged by Cleghorn at the dogs was deflected at quite an angle and passing through the intervening space struck Mr. Thompson and killed him. This action was brought by these defendants in error against Cleghorn, Richardson and Haston to recover damages occasioned by the death of Thompson.

The first trial resulted in a verdict for the plaintiffs. A new trial was awarded, and upon the second and third trials the jury failed to agree. The fourth trial resulted in a judgment for the plaintiffs, and the defendants, as plaintiffs in error, bring the case to this court.

Various errors are alleged, but there confronts us, at the very outset, the question as to whether, under the circumstances of this case, plaintiffs are entitled to recover at all. They are not unless it can be stated that Cleghorn was negligent in shooting as he did. No wantonness or *malus animus* is charged. Seeing the dogs running up the slope, Cleghorn procured the gun and discharged it at them, against the elevation or embankment of land. To be sure the bullet was in some manner deflected and, taking another course, did the damage. One of the witnesses spoke of the ground as being frozen. To what extent was not shown, but it is hardly credible that the frozen condition of the ground was responsible for the deflection of the bullet, as it appears that the bullet was marked with a small groove which ran lengthwise. This marking would probably not have so appeared had the deflection been occasioned by contact with frozen

earth. From that cause it would have presented more of a bruised appearance. It is probable that the bullet struck some small or sharp stone and was thus turned out of its course.

What constitutes actionable negligence?

"Now, a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behaviour we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things." (Poll. Torts, 36.)

"Where a man, proceeding in a lawful business, exercises reasonable care, the law does not make him an insurer of others against those consequences of his actions which reasonable care and foresight could not have prevented. The law justly ascribes such consequences to inevitable misfortune, or to the act of God, and leaves the harm resulting from them to be borne by him upon whom it falls. The contrary rule would obviously be against public policy, because it would impose so great a restraint upon freedom of action as materially to check human enterprise." (Thomp. Neg. 1234, 1235.)

"Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." (Ray, Neg. Imp. Dut. § 183. p. 663.)

"It is conceded by all the authorities that the standard by which to determine whether the person has been guilty of negligence is the conduct of the prudent, careful, diligent or skilful man in the particular situation." (Big. Torts, 289.)

So in the case of *City of Allegheny v. Zimmerman*, 95 Pa. St. 287, 40 Am. Rep. 649, which was a suit to recover for injuries caused by the falling of a liberty pole which had been erected in the street, it was held, following the general rule :

"One is answerable in damages for the consequences of his faults only so far as they are natural and proximate, and may therefore have been foreseen by ordinary forecast, and not for those arising from a conjunction of his own faults with circumstances of an extraordinary nature."

"Negligence is the want of proper care, caution, and diligence—such care, caution and diligence as, under the circumstances, a man of ordinary and reasonable prudence would exercise." (*McCully v. Clarke & Thaw*, 40 Pa. St. 402.)

"Negligence is the failure to exercise that degree of caution which a man of ordinary intelligence would exercise under the circumstances of a particular case." (*Gravelle v. Minneapolis & St. Louis Ry. Co.*, 10 Fed. 711.)

See, also, *Lewis v. Flint & Pere Marquette Ry. Co.*, 54 Mich. 55, 19 N. W. 744; *C. B. & Q. R. R. Co. v. Stumps*, 55 Ill. 367; *Sjogren v. Hall*, 53 Mich. 274, 18 N. W. 812; *Mitchell v. Chic. & G. T. Ry.*, 51 Mich. 236, 16 N. W. 388; *Hoag v. Lake Shore & Michigan Southern Railroad Co.*, 85 Pa. St. 293, 27 Am. Rep. 653; *Railroad Co. v. Jones*, 95 U. S. 441, 25 L. Ed. 506; *C. & A. R. R. Co. v. Adler*, 129 Ill. 335, 21 N. E. 846; *Heaven v. Pender*, 11 Q. B. D. 507; *Atkinson and another v. The Goodrich Transportation Co.*, 60 Wis. 141, 18 N. W. 764; *McGowan v. Chicago & Northwestern R. Co.*, 91 id. 147, 64 N. W. 891. *Davis v. Chicago, Milwaukee & St. Paul R. Co.*, 93 id. 470, 67 N. W. 1132, 33 L. R. A. 654; Bouvier; Poll. Torts, 37. We might extend quotations and multiply authorities to

an almost unlimited extent, but we deem the above sufficient.

We may say, then, that negligence, to be actionable, must result in damage to some one, which result, under all the circumstances, might have been reasonably foreseen by a man of ordinary intelligence and prudence and have been the probable result of the initial act. There are very few, if any, of the injurious things that occur in human life, but what may be traced back along the line of causation and located in an act of omission or commission by some one. We cannot be freed from the results of living in communities. There are some of those injurious results which may be directly traced, and for which the law and common consent make the author responsible. There are others which come out of the complex relationships of life, and which the law and common consent denominate accidents, and relieve the author, near or remote, from liability. We deem the injury of which the defendants in error in this case complain to be one of these.

It is suggested, however, that the fact that Cleghorn discharged the gun in the general direction of the highway along which people might be passing at any time was in itself negligence. To be sure, if the gun had been held at sufficient elevation, and the bullet, which was of comparatively small size, had gone far enough in the direction in which it was shot, it would finally have come to or crossed the highway, in which case, however, no harm would have come to Mr. Thompson. But the possibility of the bullets ever reaching the highway at all depended upon the almost inconceivable, at least very highly improbable, combination of circumstances which caused its deflection, for otherwise it would have buried itself safely in the

sandy elevation of the field toward which it was dis-
charged.

What reasoning would have led to the conclusion
that the bullet discharged by Cleghorn against this
elevated field of sand would probably have struck a
hard substance at exactly the angle it did, and be de-
flected at an angle so exact that, traversing a distance
of fifty-five or sixty rods, it would find in its exact
course the body of a man, and enter it in such place
and follow such course as to be fatal? What foresight
would have guessed at such result? What prudence
would have avoided it? Certainly none, except such
as would have restrained one entirely from discharg-
ing the gun. We may not say, however, that this
extreme of caution is required by the law. Such a
rule would paralyze human effort and action on all
lines.

The defendants in error, however, claim that it is
the peculiar province of the jury to determine whether
Cleghorn was guilty of negligence; and that, a verdict
having been found in their favor, the finding is con-
clusive on this court, and that we are not at liberty to
weigh the evidence. It is well-settled law that it is
the province of the jury, under proper instructions, to
determine whether or not, upon any given state of
facts, negligence ought to be inferred. It is equally
well settled that it is first the duty of the court to say
whether, upon the undisputed facts, or facts taken
most favorably to the plaintiff, negligence can be in-
ferred. The jury cannot arbitrarily and without evi-
dence infer negligence. When the evidence fails to
establish the defendant's duty and its non-perform-
ance, there is no evidence which justifies the jury in
finding negligence. (*The Wabash, Toledo & Western
Railway Co. v. Brannagan, Adm'x,* 75 Ind. 490; *Searles*

*v. Manhattan Ry. Co.*, 101 N. Y. 661, 5 N. E..66; Patt. Rail. Acc. L. § 373, and note 5.)

Before the court can submit the question to the jury, the evidence must affirmatively establish circumstances from which the inference fairly arises that the accident resulted from the want of some precaution which the defendant ought to have taken. (*Hayes v. Michigan Central R. R. Co.*, 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410.)

"The judge has a certain duty to discharge, and the jurors have another and a different duty. The judge has to say whether any facts have been established by evidence from which negligence *may be* reasonably inferred; the jurors have to say whether, from those facts, when submitted to them, negligence *ought to be* inferred. It is, in my opinion, of the greatest importance in the administration of justice, that these separate functions should be maintained, and should be maintained distinct. It would be a serious inroad on the province of the jury, if, in a case where there are facts from which negligence may reasonably be inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever." (*Metropolitan Railway Co. v. Jackson*, L. R. 3 App. Cas. 197; *Randall v. Baltimore & Ohio R. R. Co.*, 109 U. S. 478, 3 Sup. Ct. 322, 20 L. Ed. 1003; *Gregory, Administrator, v. The C. C. C. & I. Railroad Company*, 112 Ind. 385, 14 N. E. 228; *Conner v. The Citizens' Street Railway Co.*, 105 id. 62, 4 N. E. 441, s. c. 55 Am. Rep. 177; *Woolery, Adm'r, v. Louisville, New Albany & Chicago Railway Co.*, 107 id. 381, 8 N. E. 226, s. c. 57 Am. Rep. 115; Poll. Torts, 365.)

We are not called upon to weigh evidence. Nor are we proposing to disturb the rule that the finding of a

jury upon a disputed question of fact must be held conclusive on this court, when the same has been fairly determined under proper instructions. This is not a question as to the weight or *quantity* of evidence, but rather as to the nature or *quality* of the evidence. It is not whether there was enough evidence, but whether the evidence was of the right kind. We are forced to the conclusion that all the evidence taken together does not make out a case of actionable negligence in favor of the defendants in error against Cleghorn, and, of course, if not against him, not against any one. The elements of such negligence are not found in the case, and, therefore, the demurrer of the defendants below to the evidence of plaintiff below should have been sustained, and judgment rendered in favor of the defendants below. The case will be reversed, with the order to the court below to render such judgment.