CHARLES N. STEPHENSON V. TERRA CORDER.

No. 14,146.   (80 Pac. 938.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Runaway Team—Proximate Cause.* A farmer drove a team of eleven-year-old horses seventeen miles, hauling a wagon loaded with about a ton's weight, and hitched one of them (as he had been in the habit of doing frequently) to a hitching-rail in front of a store while he was engaged in unloading, going back and forth for this purpose but a short distance. The halter with which the horse was hitched was apparently in good condition and no defect therein was shown. While the team was standing quietly a boy, in turning over the hitching-rail near the head of the team, struck the nose of one of the horses with his foot, which frightened the team and caused them to break loose and run away, causing damage. *Held,* that the striking of the horse by the boy was the proximate cause of the accident.

Error from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed May 6, 1905. Reversed.

*Herrick & Herrick,* and *Ivan D. Rogers,* for plaintiff in error.

*Charles E. Elliott,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: This was an action to recover for personal injuries caused by a runaway team. There was no material conflict of the evidence as to

the facts of the case.  Mr. Stephenson was a market-gardener living about seventeen miles from the city of Wellington, to which city during the season for marketing fruit and vegetables, for the term of over twelve years, he drove two or three times a week with his loads of produce.  For four years of this time prior to August 5, 1901, he drove the same team that he did upon that day.  It consisted of a horse and a mare, each eleven years old.  They had been raised and broken by Mr. Stephenson and used upon his farm and for road purposes.  His young daughters were accustomed to drive the team, and they were considered safe and trustworthy by him.  On one occasion, two years prior to the date above named, a team consisting of the mare in question and another horse, while standing unhitched in a field, became frightened at the sudden appearance through a near-by hedge of Mr. Stephenson's young daughter and ran off with a plow to which they were attached.  On another occasion the same mare with another horse, becoming unhitched in some unknown way in the town of Belle Plaine, ran about a block and a half.  No other instances of misconduct or viciousness by this team or either of them were shown.  They were well broken and quiet, and had never been known to pull at the halter when hitched.

On August 5, 1901, Mr. Stephenson, in accordance with his custom, drove to Wellington with a load weighing from 1800 to 2200 pounds and stopped in front of a grocery store in order to unload his produce.  He drove up in an angling direction toward the hitching-rail, so that, the mare being on the inside and nearest the rail, he hitched her only.  The head-stall of the halter with which she was hitched was made of one-and-a-quarter-inch leather; the hitching part was a rope a half-inch or more in diameter.  It was a halter which he had been in the habit of using, but for how long does not appear; it was apparently

in a fair condition. When he drove up he noticed some boys standing around. They not infrequently came to him to get such damaged fruit or melons as he might wish to give them, and for that purpose frequently climbed upon the hind part of the wagon.

After hitching the team he proceeded to unload his produce, passing back and forth from the wagon to the grocery. While he was in the grocery on one of these trips a boy, in turning over the hitching-rail, or, as the witness termed it, making a "flip-flop," struck the mare on the nose with his foot, frightening the team, and causing them to rear back with such force as to break the chin-strap of the halter with which the mare was hitched. The team broke loose, ran down the street and collided with a buggy in which Miss Corder was riding, threw her out, and very severely injured her. Before the boy struck the mare with his foot the team had been standing quietly. It was accustomed to being hitched in this manner and place. A verdict was returned in favor of the plaintiff below and judgment entered thereon.

Many errors are assigned, some of which might serve to reverse the judgment and remand the case for a new trial. We prefer, upon the plain facts of the case, to address ourselves to vital questions, rather than to mere matters of practice. The basis of defendant's liability, of course, was his alleged negligence in leaving his team standing insecurely hitched, or fastened. The only delinquency in this respect which can be claimed from the evidence is that the chin-strap of the halter was not sufficient, and the only evidence to support such a claim is that it broke. It may well be questioned whether under the evidence in this case the fact that it broke draws with it any presumption that the strap was so defective as to make its use under ordinary circumstances negligence. In *Telephone Co. v. Vandervort, ante,* page

101, where a neck-yoke strap was broken by the side-wise plunge of a frightened team, this court said:

"There is no evidence from which the jury might have found that the harness was defective, the only evidence being that of the plaintiff himself, where he said 'my harness had been used about five months, or scarcely that.'"

There was little, if anything, more shown in the case at bar.

Ordinary care is all that was required of the defendant, and ordinary care does not require that all possible means for avoiding accident should be used. Quite true, the accident would not have occurred had the horses been hitched to an unbreakable rack with an unbreakable chain; nor would it have occurred had not the defendant driven to the city on that day; but ordinary care does not require the use of such precautions. If it did, it would, in the language of this court in *Cleghorn v. Thompson,* 62 Kan. 727, 733, 64 Pac. 605, 54 L. R. A. 402, "paralyze human effort and action on all lines." What the defendant was doing at the time was what he had done many times before without injury, and apparently what he or any reasonably prudent man would have done under the circumstances. It is suggested that the fact that he saw boys about there ought to have warned him that some of them might do the thing that the boy in question did. We hardly think this suggestion can be seriously urged; certainly it cannot be seriously entertained. Nor do we see anything in the character of the team which warranted any extraordinary precaution in the matter of fastening them. Whatever of dereliction was shown was not because of their breaking loose when tied, but because the mare had run away on two separate occasions upon sufficient provocation, or otherwise. Ordinarily the team was roadworthy, being well broken and quiet, and it is shown that neither

of them had ever been known to pull at the halter when hitched.

Did affirmance rest upon a sufficient showing of defendant's negligence we should greatly hesitate. The further question of the proximate cause of the injury, however, demands our attention. The jury, in answer to one of the special questions, and in exact accordance with the evidence, found that the horses were frightened and caused to run away by the boy's striking with his foot the one that was tied. So, granting that the team was not tied as securely as ordinary care would have required, we are confronted with the fact that this neglect did not cause the accident, and it is well settled that it is the proximate cause of an injury which must bear the burden of the result. Many law-writers and courts have attempted to give us a fairly intelligible definition of proximate cause which should be of such flexibility as to be adapted to general application. They have indifferently succeeded. A definition from one of the most recent authors and, perhaps, from all considerations one of the fairest, is the following:

"Negligence is the failure to exercise the ordinary care of prudent men under all the attending circumstances. It follows that the negligence of a person cannot be the proximate cause of a harm to another following it, unless, under all the attending circumstances, ordinary prudence would have admonished the person sought to be charged with the negligence that his act or omission would probably result in injury to some one. The general test as to whether negligence is the proximate cause of an accident is therefore said to be whether it is such that a person of ordinary intelligence should have foreseen that an accident was liable to be produced thereby. Proximate cause is, therefore, probable cause, and remote cause is improbable cause." (1 Thomp. Com. L. Neg. §50.)

This court early attempted to analyze the philosophy and make a definition of proximate cause. It

said in the case of *A. T. & Santa Fe Rld. Co. v. Stanford,* 12 Kan. 354, 377, 15 Am. Rep. 362, in speaking of a wrong-doer:

"He is responsible for any number of injurious results consecutively produced by impulsion, one upon another, and constituting distinct and separate events, provided they all necessarily follow from the first wrongful cause. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; *and if they are such as might, with reasonable diligence, have been foreseen,* the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrong-doer, *which could not have been foreseen by the exercise of reasonable diligence by the wrong-doer,* and except for which the final injurious consequence could not have happened, then such injurious consequence must be deemed to be too remote to constitute the basis of a cause of action."

The court in *Wright v. C. & N. W. Ry. Co.* 27 Ill. App. 200, 211, quoted the foregoing with approval, and added that the words in italics point out the correct distinction. In the case of *C. K. & W. Rly. Co. v. Bell,* 1 Kan. App. 71, 41 Pac. 209, the law relative to proximate cause was stated as follows:

"Before an act of negligence can be made the basis for a recovery of damages it must appear that such act was the natural and proximate cause of the injury, or directly contributed thereto."

In the case of *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, 54 L. R. A. 402, the following from *City of Allegheny v. Zimmerman,* 95 Pa. St. 295, 40 Am. Rep. 649, was quoted with approval:

"One is answerable in damages for the consequences of his faults only so far as they are natural and proximate, and may therefore have been foreseen by ordinary forecast, and not for those arising from a con-

junction of his own faults with circumstances of an extraordinary nature."

In the case of *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399, this court gave its most recent views upon the question. In its ultimate conditions it bears a strong analogy to the one at bar. In the syllabus the court announced the law as follows:

"In a case where two distinct, successive causes, wholly unrelated in operation, contribute toward the production of an accident resulting in injury and damage, one of such causes must be the proximate, and the other the remote, cause of the injury.

"A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened, between such prior or remote cause and the injury, a distinct, successive, unrelated and efficient cause of the injury.

"In a case where it is either admitted, or from the facts as found established, that two distinct, successive causes, unrelated in their operation, conjoined to produce a given injury, the question of remote and proximate cause becomes one of law for the decision of the court, and not of fact for the determination of the jury, and the determination of this question of law by the jury is not binding or conclusive on the court."

In the body of the opinion this further discussion was had:

"The existence or non-existence of negligence in any given case, wherein the facts are disputed, is a question of fact to be determined by the jury. When the facts are undisputed, and only one inference or deduction is to be drawn from them, a question of law is presented for the court. (*Dewald v. K. C. Ft. S. & G. Rld. Co.,* 44 Kan. 586, 24 Pac. 1101.) However, it is not every act of negligence that furnishes a basis for recovery of damages sustained. In the case of *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, 54 L. R. A. 402, this court held: 'Negligence, to be actionable, must result in damages to some one, which

result, in the absence of wantonness or *malus animus,* might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act. The allegation of negligence is not sustained by evidence of acts resulting in damage to another, which result is not the reasonable and ordinary outcome of such acts, and which would not have been foreseen or anticipated by the exercise of ordinary prudence and foresight under all the circumstances of the case. . . . Negligence is not the proximate cause of an accident unless, under the circumstances, the accident was a probable as well as natural consequence thereof—one which might reasonably have been foreseen by a man of ordinary intelligence and prudence.' (*City of Allegheny v. Zimmerman,* 95 Pa. St. 287.) . . .

"In cases of this character where two distinct, successive causes, unrelated in operation, to some extent contribute to an injury, it is settled that where there is an intervening and direct cause, a prior and remote cause cannot be made the basis for recovery of damages, if such prior cause did no more than furnish the condition, or give rise to the occasion, by which the injury was made possible. It seems to be sound in principle and well settled by authority that where it is admitted or found that two distinct, successive causes, unrelated in their operation, conjoin to produce a given injury, one of them must be the proximate, and the other the remote, cause of the injury, and the court, in passing on the facts as found or admitted to exist, must regard the proximate as the efficient and the consequent cause, and disregard the remote cause." (Pages 397-399.)

Now, if we grant that the chin-strap of the halter was defective and that this sufficiently appeared in the evidence, and that Stephenson knew of this defect, can it be said, in view of the law heretofore laid down by this court, that such defect was the proximate cause of the accident? The injurious result would not have followed had not the new and independent cause intervened. This new cause had no causal connection with the negligence of Stephenson. The hitting of the mare on the nose by the boy was not caused by

the defect in the halter, nor was it under the control of Stephenson; nor can it be said with the slightest fairness that it could have been foreseen by the exercise of reasonable diligence on his part. The most that can be said is that the defect, if any, in the halter and the frightening of the team were two distinct, successive causes, wholly unrelated in operation, which contributed to the production of the accident resulting in the injury and damage; and, therefore, the frightening of the team, being the immediate and probable cause, was the proximate cause, and the defect in the halter, being the secondary and improbable cause, was the remote cause. This being so, the defendant was not liable for the unfortunate accident, and his request that the jury be so instructed should have been granted.

The judgment is reversed, and the case remanded for further proceedings.

All the Justices concurring.