THE MISSOURI PACIFIC RAILWAY COMPANY v. JENNIE
V. COLUMBIA.

No. 12,482.   ( 69 Pac. 338.)

SYLLABUS BY THE COURT.

1. PERSONAL INJURY—*Proximate and Remote Causes*. In a case where two distinct, successive causes, wholly unrelated in operation, contribute toward the production of an accident resulting in injury and damage, one of such causes must be the proximate, and the other the remote, cause of the injury.

2. ——— *Proximate Cause Only Basis of Action*. A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened, between such prior

or remote cause and the injury, a distinct, successive, unrelated and efficient cause of the injury.

3. ———— *Question of Law for Court—Finding of Jury Inconclusive.* In a case where it is either admitted, or from the facts as found established, that two distinct, successive causes, unrelated in their operation, conjoined to produce a given injury, the question of remote and proximate cause becomes one of law for the decision of the court, and not of fact for the determination of the jury, and the determination of this question of law by the jury is not binding or conclusive on the court.

Error from Morris district court; O. L. MOORE, judge.   Opinion filed July 5, 1902. · *In banc.*   Reversed.

*Waggener, Horton & Orr,* for plaintiff in error.

*Humphrey & Humphrey,* and *John Maloy,* for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.:   C. D. Columbia, a locomotive fireman in the employ of the Missouri Pacific Railway Company, was killed by the derailment of his engine at the station of Langley, on said road.   His widow, Jennie V. Columbia, in her own behalf and in behalf of her minor children, brought this action to recover damages on account of negligence of the company, resulting in his death.   The acts of negligence charged were :   (1) That the company negligently permitted several heavy grain doors to be. piled and to remain upon a raised platform at the west end of its depot at the station of Langley, near the track upon which the engine which Columbia was firing was scheduled to pass on the night of May 9, 1899, which doors, being there so negligently placed, were blown off, falling upon the track, derailing the engine, and causing the death ;   (2) that it was the duty of the company to

Railway Co. v. Columbia.

provide a reasonably safe and clear track for the engine, but, in disregard of its duty in this respect, it negligently permitted said doors to remain upon the track after being blown there by the wind, thus obstructing the track and rendering it unsafe for use, the result of which negligence caused the death of Columbia. The general verdict was for the plaintiff. In addition to the general verdict, at the request of defendant, the jury made special findings of fact from the evidence, as follows:

"Ques. 1. How long had C. D. Columbia, deceased, been in the employ of the defendant company prior to May 9, 1899? Ans. About seven years.

"Q. 2. In what capacity had the said C. D. Columbia been employed by the defendant prior to May 9, 1899? A. Two years in roundhouse and five years fireman on locomotive.

"Q. 3. In his capacity as fireman on locomotive-engine, did his duty require him to pass and repass said station where said doors were piled many times day and night prior to the evening of May 9, 1899? A. Yes.

"Q. 4. If question No. 3 is answered in the affirmative, then state how frequently the said C. D. Columbia had passed said depot previous to the date of the said accident. A. According to evidence, about 600 times in the five years.

"Q. 5. For what length of time previous to the date of the said accident had said doors been piled on said depot platform? A. Since the road had been in operation.

"Q. 6. Were the same piled in a conspicuous place on the platform, where they could easily be seen by the said C. D. Columbia and other employees passing to and fro over the track? A. Yes.

"Q. 7. Was it the usual and ordinary practice of the defendant company to pile grain doors upon the platform of their various stations in the manner in which the grain doors were piled at the station of Langley

Railway Co. v. Columbia.

on the evening of May 9, 1899, and prior thereto?
A. No.

"Q. 8. If you answer question No. 7 'no,' or in the
negative, then state what was the practice of de-
fendant with reference to piling of grain doors along
its line of road at other stations. A. At stations
where there were elevators, near the elevator, and at
the depot where there is no elevator.

"Q. 9. How many grain doors were piled on the
depot platform at Langley on the evening of May 9,
1899?   A. From eleven to fifteen.

"Q. 10. What were the dimensions and weight of
said grain doors so piled on said platform of the depot
at Langley on the evening of May 9, 1899?   A. About
five and one-half to six and one-half feet; weight,
from 70 to 100 pounds.

"Q. 11. How far from the track on which deceased
was injured were the said grain doors piled on the
platform of said station?   A. From fifteen to twenty-
two feet.

"Q. 12. For how many years prior to May 9, 1899,
had it been the custom to pile the grain doors on the
depot platform at Langley, Kan.?   A. From ten to
fourteen years.

"Q. 13. If you find that it had been the custom or
practice of said defendant company to pile the grain
doors on the depot platform at Langley, Kan., then
state if there had ever before been an accident similar
to the one which resulted in the injury complained of,
or any other accident by reason of the piling of grain
doors on said depot platform?   A. No."

"Q. 15. During the time that you find it has been
the custom or practice of the defendant company to
cause its grain doors to be piled on the depot platform
at Langley, Kan., had any accident ever resulted on
account of said grain doors being so piled?   A. No.

"Q. 16. Were one or more of said grain doors car-
ried, by an unusual and extraordinary wind-storm or
severe gale, from the place where they were piled onto
defendant's track?   A. By severe gale."

"Q. 20. Was said wind-storm of such a character
as to blow off a bracket on said depot?   A. No..

"Q. 21. If you answer question No. 20 'no,' or in the negative, then state what damage, if any, was done to said depot by reason of said wind-storm. A. Two battens ripped off and two brackets damaged."

"Q. 24. At the time said doors were blown onto said track, was there any agent or employee of the defendant company on duty in or about the said depot building? A. No.

"Q. 25. Did any employee of the defendant company have any notice or knowledge that said grain doors or any thereof had been blown onto the track previous to the injury complained of? A. No."

"Q. 27. How long did the said grain doors which were blown onto the track remain on the track before the accident occurred? A. No evidence to show.

"Q. 28. If there had been no wind-storm or severe gale on the evening of May 9, 1899, would the accident complained of have occurred? A. We believe not.

"Q. 29. Was the wind-storm or severe gale which carried the door from the pile, on the platform to the track where the accident occurred the proximate cause of the accident? A. No.

"Q. 30. If you answer the next preceding question 'no,' or in the negative, then state what was the proximate cause of the accident. A. By piling grain doors on elevated platform in an exposed position."

The defendant filed its motions for judgment in its favor on these findings, notwithstanding the general verdict, and for a new trial, which motions were overruled and judgment entered on the verdict in favor of plaintiff. Defendant brings error.

The single question for our consideration is, Was defendant entitled to judgment on the special findings made by the jury, notwithstanding the general verdict? It is obvious that, under the findings made, the second claim of negligence pleaded is eliminated from the controversy, for, the burden of proof resting upon the plaintiff to prove the acts of negligence

Railway Co. v. Columbia.

charged, and there being, as found by the jury, "no evidence to show" how long the grain doors remained upon the track before the engine arrived at the place of derailment, negligence in permitting an obstruction to remain upon the track was not proved.  As to the remaining act of negligence charged, on the findings made, a much more grave and serious controversy arises.

From the findings it is learned that the deceased had been employed by the company as locomotive fireman on its line of railway for five years, during which time he had passed the station of Langley about 600 times.  It was the custom of the company at stations where no elevator was located to pile the grain doors at the depot.  There was no elevator at Langley.  The company had piled the grain doors upon the depot platform at this station since the construction and operation of the road, a period of some ten to fourteen years.  There were, on the night of the injury, from eleven to fifteen of these doors, in size about five and one-half by six and one-half feet in dimensions, in weight from 70 to 100 pounds, piled in the usual place and manner about fifteen to twenty-two feet from the track.  During all the years in which the road had been operated these grain doors had been so piled and no accident had resulted therefrom.  On the night in question a severe gale blew one or more of them from the place where located upon the track, resulting in such obstruction as to derail the engine, causing the death of deceased.  Had the severe gale not blown, the injury complained of would not have happened.  The findings so made up to this point are without doubt clearly in favor of defendant, but, in respect to questions numbered 29 and 30, the jury found that the piling of these grain doors in an ex-

posed position upon the elevated platform was, and the severe gale which blew at that time was not, the proximate cause of the derailment of the engine.

Upon these findings the learned counsel for plaintiff in error make two contentions: First, that the deceased must have known of the practice of piling these grain doors at this station, and, knowing this fact, by continuing in the employ of the company without protest he assumed the risk incident thereto, if any might have been foreseen; second, that the place and manner of keeping the grain doors, taken in connection with all the findings in the case as made by the jury, do not constitute actionable negligence against the company; and the jury, having found that two distinct, successive causes, independent in their operation, contributed toward the injury complained of by plaintiff, it became a matter of law for the court to declare which of the two distinct, successive, independent causes was the direct and proximate cause of the injury, and that this question of law was not settled and concluded by the findings of the jury as to the proximate cause of the injury.

To the first proposition we cannot agree. It was not shown that deceased had any actual knowledge of the place and manner in which the doors were piled. Nor was it shown that it was any part of the duty of a locomotive fireman to observe or know the manner of piling grain doors at the stations along the line of road, and there is nothing in the nature or character of his duties which would necessarily attract his attention to such objects. He was not, therefore, required to know such fact. Again, assuming for the purpose of the argument that the deceased actually knew of the location of these doors at the station of

Langley, or that, from the frequency with which he had passed this station in the five years of his service as fireman, with these doors placed in plain and unobstructed view, he must have known of their location and existence, yet the argument must fail, because it was not shown that deceased knew, or should have known, that the manner or place of piling the doors portended danger to him. He had the right to assume that the company, in the exercise of a superior knowledge in the performance of its duty to furnish a clear and reasonably safe track over which to run the engine, would not place these doors in such position as to expose him to unnecessary danger. (*T. H. & I. Ry. Co. v. Williams*, 172 Ill. 379, 50 N. E. 116, 64 Am. St. Rep. 44; *Dickson v. Omaha & St. L. R'y. Co.*, 124 Mo. 140, 27 S. W. 476, 25 L. R. A. 320, 46 Am. St. Rep. 429; *Tutrix v. Sellers & Co.*, 39 La. Ann. 1011, 3. South. 363, 4 Am. St. Rep. 256; *L. R. M. R. & T. Ry. Co. v. Leverett, Admr.*, 48 Ark. 333, 3 S. W. 50, 3 Am. St. Rep. 230; *St. L. Ft. S. & W. Rld. Co. v. Irwin*, 37 Kan. 701, 16 Pac. 146, 1 Am. St. Rep. 266; *A. T. & S. F. Rld. Co. v. Rowan*, 55 id. 270, 39 Pac. 1010.)

The remaining proposition is one more difficult of solution. The existence or non-existence of negligence in any given case, wherein the facts are disputed, is a question of fact to be determined by the jury. When the facts are undisputed, and only one inference or deduction is to be drawn from them, a question of law is presented for the court. (*Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101.) However, it is not every act of negligence that furnishes a basis for recovery of damages sustained. In case of *Cleghorn v. Thompson*, 62 Kan. 727, 64 Pac. 605, this court held:

"Negligence, to be actionable, must result in dam-

age to some one, which result, in the absence of wantonness or *malus animus*, might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act.

"The allegation of negligence is not sustained by evidence of acts resulting in damage to another, which result is not the reasonable and ordinary outcome of such acts, and which would not have been foreseen or anticipated by the exercise of ordinary prudence and foresight under all the circumstances of the case.

In the opinion, quoting from *City of Allegheny v. Zimmerman*, 95 Pa. St. 287, 40 Am. Rep. 649, it was said :

"One is answerable in damages for the consequences of his faults only so far as they are natural and proximate, and may therefore have been foreseen by ordinary forecast, and not for those arising from a conjunction of his own faults with circumstances of an extraordinary nature."

"Negligence is not the proximate cause of an accident unless, under the circumstances, the accident was a probable as well as natural consequence thereof—one which might reasonably have been foreseen by a man of ordinary intelligence and prudence." (*Huber v. The La Crosse City R. Co.*, 92 Wis. 636, 66 N. W. 708, 31 L. R. A. 583, 53 Am. St. Rep. 940.)

"It is not enough that the defendant has been negligent, unless that negligence has contributed to the injury of the plaintiff." (*Sowles v. Moore*, 65 Vt. 322, 26 Atl. 629, 21 L. R. A. 723.)

While one is responsible for such consequences of his fault as are natural and probable, and might therefore be foreseen by ordinary forecast, if his fault happened to concur with something extraordinary and therefore not likely to be foreseen, he will not be answerable for the extraordinary result. (*Schaeffer v. Jackson Township*, 150 Pa. St. 145, 24 Atl. 629, 18 L. R. A. 100, 30 Am. St. Rep. 792; *Milwaukee etc. Railway Co. v.*

*Kellogg*, 94 U. S. 469, 24 L. Ed. 256 ; *Hubbell v. City of Yonkers*, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522 ; *Washington v. B. & O. R. R. Co.*, 17 W. Va. 190 ; *Block v. Milwaukee Street R. Co.*, 89 Wis. 371, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849 ; *High Line Canal Co. v. Westlake*, 23 Col. 26, 46 Pac. 134 ; *Lewis v. Flint & Pere Marquette Ry. Co.*, 54 Mich. 55, 19 N. W. 744 ; *Daniels et al. v. Ballentine et al.*, 23 Ohio St. 532, 13 Am. Rep. 264 ; *Henry v. The St. Louis, Kansas City & Northern Railway Company*, 76 Mo. 288, 43 Am. Rep. 762.)

In cases of this character where two distinct, successive causes, unrelated in operation, to some extent contribute to an injury, it is settled that where there is an intervening and direct cause, a prior and remote cause cannot be made the basis for recovery of damages, if such prior cause did no more than furnish the condition, or give rise to the occasion, by which the injury was made possible.  It seems to be sound in principle and well settled by authority that where it is admitted or found that two distinct, successive causes, unrelated in their operation, conjoin to produce a given injury, one of them must be the proximate, and the other the remote, cause of the injury, and the court, in passing on the facts as found or admitted to exist, must regard the proximate as the efficient and consequent cause, and disregard the remote cause.

In *Pass Ry. Co. v. Trich*, 117 Pa. St. 390, 11 Atl. 627, 2 Am. St. Rep. 672, it was held :

"When, in an action for negligence, the fact is undisputed in the evidence that the injury received was inflicted by an intervening agency over which the defendant had no control, the question of remote or proximate cause must be determined by the court, and the jury instructed accordingly."

In *Herr v. City of Lebanon, Appellant*, 149 Pa. St. 222, 24 Atl. 207, 16 L. R. A. 106, 34 Am. St. Rep. 603, it was held :

"If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case, the law regards the proximate as the efficient and consequent cause and disregards the remote."

In *Goodlander Mill Co. v. Standard Oil Co.*, 11 C. C. A. 253, 27 L. R. A. 583, 63 Fed. 400, it was said :

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." (*Bleil v. Railway Co.*, 98 Mich. 228, 57 N. W. 117 ; *Insurance Co. Boon*, 95 U. S. 117, 24 L. Ed. 395.)

Applying these principles to the case at bar, what conclusion must be reached therefrom? We find the grain doors in question piled fifteen to twenty-two feet from the track ; they weighed 70 to 100 pounds each ; they were five and one-half by six and one-half feet in dimension ; with battens nailed across the ends, they were two inches in thickness ; there were eleven to fifteen of them, thus making a pile of the height of twenty-two to thirty inches ; they were piled against the depot building. In this place and manner the same kind of doors had been placed from ten to fourteen years prior to the injury, and no accident was caused thereby. That the placing of these doors in such position furnished the occasion or condition which rendered the accident possible is not to be disputed, and cannot be denied. That is to say, if these grain doors had not been there on the depot platform the accident which did happen would not have happened ; the injury would not have occurred. But can it be reasonably and successfully maintained that the

employees of the company, in the exercise of that reasonable care and precaution required for the safety of those operating the engines of the company to keep the track free of obstructions, should have foreseen, anticipated, or even imagined that, from the operation of any ordinary natural cause, these doors, or one or more of them, might be lifted and carried from the place where located and lodged upon the track in such manner as to obstruct and render dangerous the operation of the road or to cause the derailment of an engine? We think not. On the night in question a severe gale blew. A gale is defined as a wind having a velocity of forty to seventy miles an hour. (Stand. Dict.) Webster defines a heavy gale as a wind having a velocity of eighty miles an hour. The jury found, and must of necessity have found, under the evidence, that the accident would not have occurred in the absence of this severe gale.

In *Milwaukee etc. Rly. Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256, Mr. Justice Strong, in delivering the opinion of the court, said:

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. . . . We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or non-feasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always

26—65 KAN.

be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

The trial court instructed the jury as follows:

"The jury are instructed that by the proximate cause of an injury is meant that cause which, in the natural and continuous sequence, unbroken by any intervening cause, produces the injury, and without which the result would not have occurred.

"The jury are instructed that negligence is not the proximate cause of an accident unless, under all the circumstances, the accident might have been reasonably foreseen by a man exercising reasonable and ordinary care. It is not enough to prove that the accident is the natural consequence of some negligence. It must also have been the probable consequence of the special act of negligence alleged in plaintiff's petition; and before you can find a verdict for the plaintiff herein, you must find from the evidence that the piling of the said grain doors upon the platform of defendant company at Langley, Kan., was negligence, and that the defendant company, in the exercise of reasonable and ordinary care, should have foreseen that the piling of said grain doors upon the platform at Langley, Kan., would in all probability cause an injury similar to that which did happen on the evening of May 9, 1899, and which resulted in the death of C. D. Columbia.

"You are instructed that that which never happened before, and which in its character is such as not naturally to occur to prudent men, to guard against its happening at all cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against the remote contingency."

Measured by authority, determined upon principle, or viewed in the light of the instructions of the court to the jury, which of the two distinct, successive causes operating independently of each other to pro-

duce the injury, that is, the place and manner of piling and keeping the grain doors, or the severe gale, must be held to have been the consequent, efficient and proximate cause of this injury?   Manifestly, it must be said that the place and manner of piling and keeping the doors did no more than furnish the condition, afford the opportunity, for the accident which occurred.   The operation of the successive, wholly independent and unrelated cause and intervening agency, the severe gale, was the consequent, efficient and proximate cause of the grain doors' being upon the track, which resulted in the derailment of the engine and damage to plaintiff.

It follows that, under the charge of the court to the jury, and the findings of fact as made by the jury, the general verdict should have been in favor of the defendant.   The jury failing in this, the trial court should have sustained the motion for judgment on the findings made, notwithstanding the general verdict.   The judgment must therefore be reversed, and the cause remanded with instructions to enter judgment on the findings in favor of defendant.

All the Justices concurring.