THE HOME OIL & GAS COMPANY, *a Partnership, etc.,*
v. W. M. DABNEY *et al., as Partners, etc.*

No. 15,937. (101 Pac. 488.)

SYLLABUS BY THE COURT.

1. PROXIMATE CAUSE—*Question of Law or Fact.* Ordinarily the question whether a given act or omission was the proximate cause of an injury is for the jury, but where the facts are undisputed, and the court can see that the resulting injury was not probable but remote, it is the duty of the court to determine the question of proximate cause and not send it to a jury.

2. DAMAGES—*Injury by Fire—Proximate Cause—Evidence.* In an action to recover damages for the loss of drilling-tools and machinery by fire at a well, resulting from an explosion of flowing oil and gas, where the only negligence charged is that the owners of the well caused the same to be shot with nitroglycerin late in the evening instead of waiting until the following day, and failed to take precautions before shooting the well to have the same capped and connected with a tank, and failed to leave a suitable person in charge of the well during the night, and the evidence shows that the explosion occurred about nine o'clock in the night-time, when no one was present, that there was no fire about the premises, and there is no evidence showing how the escaping oil and gas came in contact with fire, and nothing to show what the immediate or direct cause of the explosion was, *held,* that the alleged acts of negligence were the remote and not the proximate cause of the injury, that the proximate cause was necessarily some independent agency, that the acts of the defendants did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, and that on the undisputed facts a demurrer to the evidence should have been sustained.

Error from Chautauqua district court; J. A. FER-RELL, judge *pro tem.* Opinion filed April 10, 1909. Reversed.

STATEMENT.

THE plaintiffs, W. M. Dabney and George L. Lane, were partners engaged in the business of drilling oil and gas wells. The defendants were partners, under the name of the Home Oil & Gas Company, and were

the owners of an oil-and-gas lease of land upon which the plaintiffs contracted to drill a well. After the well had been brought in and turned over to the owners there was an explosion of escaping oil and gas, resulting in a fire, which damaged and partly destroyed the plaintiffs' drilling-machinery. This action is to recover for the loss which it, is alleged was occasioned by the negligence of the defendants. Issues were joined and there was a trial to a jury. At the conclusion of the plaintiffs' testimony the defendants demurred. The demurrer was overruled, and the verdict and judgment were for the plaintiffs. The defendants prosecute error, and the main contention is that the demurrer to the evidence should have been sustained.

The petition sets up an oral contract by the terms of which the plaintiffs were to furnish the machinery and receive 75 cents a foot for drilling the well, and $15 a day for cleaning it out. The defendants were to furnish the casing and all connections and material to connect and equip the well. It is alleged that on December 17, 1905, at about six o'clock in the evening, the well was completed to a depth of 1100 feet, and defendants were duly notified of that fact; that it was discovered in drilling the well that it produced both oil and gas, the gas being in small or limited quantity. There is a further allegation that when the well was about completed the defendants were notified that it would be very late in the evening before the well would be finished to the proper depth, and that the defendants were advised by the plaintiffs "not to order the shot that day as it would be very late before the well would be ready for shooting"; that, notwithstanding the caution and advice so given by the plaintiffs, the defendants took charge of the well about 6:30 o'clock in the evening and thereupon proceeded to shoot the well with forty or fifty quarts of nitroglycerin. It is further alleged that the defendants failed to furnish any casing-head to be put on the top of the casing after the shot,

and failed in any way to connect the well with a tank in order that the very probable flow of oil and gas resulting from the shot might be conducted to the tank, and failed to place a capable or suitable person in charge of the well during the night, "all of which should have been done by said defendants."

It is alleged that before the well was turned over to the defendants the plaintffs took down the forge and to the best of their ability put out the fire and cooled off all the heated portions of the forge with water in order to prevent any possible explosion, and put out all fire in and about the boiler that could by them be seen or discovered, and with water cooled off all hot or heated material about the boiler except that portion of the boiler which it was necessary should remain warm in order to produce sufficient steam for the defendants to shoot the well; that about eight o'clock in the evening the oil and gas began to flow out through the casing to the surface, and over the drills and machinery of the plaintiffs; and that about nine o'clock an explosion of oil and gas took place, resulting in the burning and destruction of the plaintiff's property.

The negligence of the defendants is alleged to have been in shooting the well in the night-time and after dark, and in shooting it without having ready to be placed on the top of the casing a good and sufficient casing-head, and in failing and neglecting to have the well after it was shot properly connected with an oil-tank for the purpose of collecting and holding such oil and gas as might flow during the night, and by failing to look after the well during the night by leaving a capable or suitable person in charge thereof. There is no allegation in the petition of how the explosion occurred or what was the immediate cause of it.

On the trial the man in charge of the drilling for the plaintiffs, Charles Slaughterbeck, testified that the well was finished about five o'clock; that Charles Hess, the manager of the defendants, was there at the time; and

that when the well was completed it was measured up and the shot was put off just about dusk.   The only testimony with respect to any advice or warning given defendants is as follows:

"Ques.  What did you say to him?   Ans.  Well, in the first place, before noon he asked me when the well would be ready to shoot, and I told him it would be night before we could get through the sand and get the shot off—it would be night—and he said he would see about it when he came out after dinner.   When he came out after dinner he had ordered the shot, and the shooter came and waited two or three hours, I suppose to be ready to shoot it, and I asked him if it could n't wait until morning, it would make it late, but he seemed to want to shoot the well, and he did shoot it."

Slaughterbeck testified that he helped the shooter put in the shot, under the directions of Mr. Hess; that there was no cap put over the well, and no connections were made, and no nipple was there for the purpose of putting on a casing-head.   He also testified to putting out the fire in the forge and under the boiler, and that he took every precaution possible to see that there was no fire about the premises when he left.

There was no one about the well at the time the explosion occurred, and there is no evidence to show what caused it.

*D. E. Rathbun,* for plaintiffs in error.

*W. H. Sproul,* and *N. E. Van Tuyl,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.:   The main contention is that the demurrer should have been sustained.   The reasons presented in the brief in support of this claim are far from convincing.   We have not, for instance, been able to discover in what way contributory negligence, assumption of risk or the doctrine of "the last clear chance," which are urged at length and supplemented with nu-

merous citations, can be said to have any application to the facts. We have no hesitation, however, in concluding that the demurrer should have been sustained.

There were no special findings, but it is apparent that the act of the defendants in shooting the well in the evening was not the proximate cause of the fire. There is nothing in the evidence to warrant the assumption that the same result might not have occurred if the shooting had been postponed to the following day, nor is there any evidence that it is negligence to shoot a well in the evening. Again, notwithstanding the absence of any findings, it is obvious that there must have been some intervening, direct cause for the explosion; the escaping gas must necessarily have come in contact with fire. The evidence does not disclose, nor does the petition allege, what was the direct cause. The explosion may have been brought about by a stroke of lightning, or by the merest accident, or by the intentional or careless act of some person for whose conduct the defendants were in no way responsible. Whatever the direct cause may have been, it was obviously unrelated in its operation to the act of the defendants in shooting the well in the evening, or in failing to cap the well and pipe the gas to a tank, or to their failure to have some person on the ground watching the premises.

The case therefore falls within the doctrine of *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399. In that case a locomotive fireman lost his life by the derailment of his engine. The railway company had permitted several heavy grain-doors to be piled and to remain on a raised platform near the track at one of its railroad stations. During a storm these doors were blown off, fell upon the track, derailed the engine, and caused the death. There was a general verdict for the plaintiff, and in addition the jury made special findings, among others, that if there had been no wind-storm the accident complained of would not

have occurred. There was also a finding that the severe gale or wind-storm that carried the doors from the pile on the platform to the track was not the proximate cause of the accident, but that the proximate cause was the negligence of the railway company in piling the grain-doors on the platform in an exposed condition. In the opinion the well-settled rule that where two distinct, successive causes, wholly unrelated in operation, contribute to an accident one must be the proximate and the other the remote cause was recognized and applied. The following quotation from the syllabus states the law:

"A prior and remote cause can not be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened, between such prior or remote cause and the injury, a distinct, successive, unrelated and efficient cause of the injury."

It was said in the opinion:

"While one is responsible for such consequences of his fault as are natural and probable, and might therefore be foreseen by ordinary forecast, if his fault happened to concur with something extraordinary, and therefore not likely to be foreseen, he will not be answerable for the extraordinary result." (Page 398.)

In the case at bar, if we concede that the defendants were negligent in causing the well to be shot in the evening—although there is not the slightest evidence to warrant such a conclusion, or that they were negligent in failing to keep some one on watch or guard during the night—although it is not perceived in what way a person in charge could have prevented the explosion, or that the defendants were negligent in failing to cap the well and connect it with a tank to receive the oil and gas, still, unless it can be said that the explosion and fire were the natural and probable consequences of the failure of the defendants to do these things, they can not be held responsible. The most that can be said

is that, if any or all the acts of the defendants taken together constituted negligence, the negligence must be regarded as the prior or remote cause; and if these prior causes "did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible" (*Railway Co. v. Columbia, supra*) they can furnish no basis for the recovery of damages. As was held in *Sowles v. Moore,* 65 Vt. 322, 21 L. R. A. 723, "it is not enough that a defendant has been negligent, unless that negligence has contributed to the injury of the plaintiff." (Syllabus.) In *Railway Co. v. Parry,* 67 Kan. 515, 73 Pac. 105, it was said:

"Negligence, to be the proximate cause of an injury, must be such that a person of ordinary caution and prudence would have foreseen that an injury would likely result therefrom; not that the specific injury would result, but an injury of some character." (Page 519.)

(To the same effect are: *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, 54 L. R. A. 402; *Light Co. v. Koepp,* 64 Kan. 735, 68 Pac. 608; *Goodlander Mill Co. v. Standard Oil Co.,* 11 C. C. A. 253, 27 L. R. A. 583, 63 Fed. 400.)

In volume 1 of Thompson's Commentaries on the Law of Negligence, section 59, the rule is stated as follows: "It is sufficient that the injuries are the natural, though not the necessary and inevitable, result of the negligent fault."

In *Stone v. Boston & Albany Railroad,* 171 Mass. 536, 41 L. R. A. 794, it was held that the negligence in storing oil on a station platform is not the proximate cause of damage by fire which is started by the careless dropping of a match by a person who comes to the platform to deliver goods and who is not a servant or employee or guest of the railroad company. On the other hand, there are numerous cases where it is apparent that it was the duty of the original wrong-doer to anticipate and provide against the intervention of

an independent agency, because in the ordinary course of events such intervention would occur. In *Lane v. Atlantic Works,* 111 Mass. 136, a verdict for the plaintiff was allowed to stand because the jury found that the meddling of young boys with a loaded truck left in the public street was an act which the defendants should have apprehended and provided against. In the opinion the court said:

"In actions of this description the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended." (Page 139.)

In the present case there is an absence of any proof as to the immediate cause of the explosion, and we are therefore left to the natural inferences. Was the explosion the natural consequence of the defendants' negligence in shooting the well at night, or in failing to have it capped or connected with a tank, or in failing to have some one on guard during the night? If we apply this test it is apparent that the defendants can not be held responsible. There was no close connection between the alleged acts of negligence and the explosion. It can be said that it was possible, of course, that lightning might strike the well and cause an explosion, or that some careless person might throw a lighted match into it, or fire might by some accidental means be brought in connection with the gas; but it is apparent that in the usual or ordinary course of events these would not be expected to occur.

Is the question one of law for the court or one of fact for the jury? In *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399, it was expressly held:

"Where it is either admitted, or from the facts as found established, that two distinct, successive causes, unrelated in their operation, conjoined to produce a given injury, the question of remote and proximate

cause becomes one of law for the decision of the court, and not of fact for the determination of the jury, and the determination of this question of law by the jury is not binding or conclusive on the court." (Syllabus.)

In *Stone v. Boston & Albany Railroad*, 171 Mass. 536, 51 N. E. 1, the contention was made that it was a question for the jury, and the court said:

"But where upon all the evidence the court is able to see that the resulting injury was not probable, but remote, the plaintiff fails to make out his case, and the court should so rule the same as in cases where there is no sufficient proof of negligence. *McDonald v. Snelling*, 14 Allen, 290, 299." (Page 543.)

(To the same effect is *Pass Ry. Co. v. Trich*, 117 Pa. St. 390, 11 Atl. 627, 2 Am. St. Rep. 672.)

The petition in the present case was not attacked by demurrer, but defendants objected to any evidence, and now urge the overruling of the objection as error. Without stopping to consider whether the petition, aided by all the presumptions in its favor when so attacked, stated a cause of action, there can be no doubt that the petition could not have withstood an attack by demurrer. The case of *McGahan v. The Indianapolis Natural Gas Company*, 140 Ind. 335, 49 Am. St. Rep. 199, is directly in point. That was an action to recover for injury caused by the escape and explosion of natural gas through negligence. The complaint was held bad on demurrer because it failed to show what brought about the explosion. Although the question arose there on the construction of the pleading, the following language of the opinion applies with peculiar force to the facts in this case:

"But we can say, as a matter of common knowledge, that the injury was not due to spontaneous combustion, and that it was impossible without some agency acting upon the leaking gas; therefore, we can say further that but for such agency the injury had not been.

"We can not say that the intervening agent was not a responsible agent, one not conscious of the presence and dangerous character of the explosive, as an infant

or an insane person. The facts essential to a consideration of this important question are wholly absent. The burden rested upon the appellant to allege facts showing that the injury was due to the appellee's negligence, and, from the facts alleged, we learn that the omission complained of supplied the condition upon which, necessarily, some agent acted in producing the injury, the omission being an antecedent to the explosion. If it can be said that the escaping gas was the direct and efficient or proximate cause of the injury to the exclusion of every fact or circumstance that might have operated upon it, and that no agency could have taken it up and employed it so as to have become the dominating and effective cause, then this complaint is sufficient, so far as this question is concerned; otherwise it is not." (Pages 337, 338.)

It was further held that, by·indulging the ordinary presumptions against the pleadings, in the absence of any allegation as to the agency necessary to have intervened the court will presume that it was a responsible agent.

Here the plaintiffs make no attempt to explain the manner in which the oil and gas came in contact with fire, and even offer proof showing that there was no fire in close proximity. It is therefore conclusively established that some intervening agency necessarily combined with the alleged negligent acts of the defendants to produce the injury, and, whatever its nature may have been, that it was not related to the prior or remote cause. The general verdict of the jury is therefore not conclusive, and the question must be determined by the court.

Ordinarily the question whether a given act or omission is the proximate cause of an injury is for the jury, but where the facts are undisputed, and the court can ·see that the resulting injury was not probable but re-·mote, it is the duty of the court to determine the question of proximate cause and not send it to a jury. (*Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399; *Read v. Nichols et al.*, 118 N. Y. 224,

7 L. R. A. 130, 23 N. E. 468; *The Pennsylvania Company v. Whitlock,* 99 Ind. 16, 50 Am. Rep. 71; *West Mahanoy v. Watson,* 112 Pa. St. 574, 3 Atl. 866; *Behling v. Pipe Lines, Appellant,* 160 Pa. St. 359, 28 Atl. 777, 40 Am. St. Rep. 724; *Goodlander Mill Co. v. Standard Oil Co.,* 11 C. C. A. 253, 27 L. R. A. 583, 63 Fed. 400; *Taylor v. Baldwin,* 78 Cal. 517, 21 Pac. 124.)

It follows that the judgment must be reversed, and the cause remanded for a new trial.