GEORGE E. WARD *v.* INTER-ISLAND STEAM NAVI-
GATION COMPANY, LIMITED, AN HAWAIIAN
CORPORATION.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 20, 1914.                    DECIDED MARCH 17, 1914.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

MASTER AND SERVANT—*defective appliance—injury—proximate cause.*

The defendant having negligently continued the use of a de-
fective cable on its coal conveyor which, by reason of its defective
condition, came off certain pulleys designed to hold it in position,
and the plaintiff, an employee of the defendant on the conveyor,
in attempting to restore the cable to its proper position was in-
jured. The question, whether the proximate cause of the plaintiff's
injury was the negligence of the defendant in failing to furnish
a reasonably safe cable for use, is not a question of science or
legal knowledge, but a question of fact for determination by a
jury.

OPINION OF THE COURT BY DE BOLT, J.

(Perry, J., Dissenting.)

This is a writ of error to review a judgment of nonsuit en-
tered in the circuit court of the first circuit,—the sole assign-
ment of error being the granting of the motion for nonsuit and
entry of judgment thereon. The record sent up in response
to the writ shows that George E. Ward, the plaintiff in error,
hereinafter called the plaintiff, brought an action against the
Inter-Island Steam Navigation Company, Limited, the defend-
ant in error, hereinafter called the defendant, to recover
damages in the sum of $50,000 for personal injuries sustained
by him on July 8, 1912, as the result of the alleged negligence
of the defendant while the relation of master and servant existed
between them.

On and prior to the date of the accident which occasioned the
injury to the plaintiff complained of in his action, the defend-
ant, as a part of its business, maintained and operated in Ho-

nolulu a coal conveyor used for the purpose of unloading coal from ships made fast to the wharf on which the conveyor was constructed. The conveyor consisted of an elevated double-track railway, circular at each end, about twenty-five feet in height above the wharf, and upon which railway coal cars were moved by an endless steel cable about 2800 feet in length operated by an engine and drum situated under the conveyor on the wharf. The cable was held in position at the circular ends and curves of the railway by pulleys. Near the engine house a weighted box was suspended on the cable for the purpose of keeping it taut when in use, which could be raised or lowered by block and tackle.

At the time of the accident the plaintiff had been in the employment of the defendant about eight years as machinist in its shops and as foreman at the coal conveyor, occasionally going to sea as engineer on one of the defendant's boats.

While the plaintiff was engaged at the conveyor as foreman his chief work was on the ships superintending the discharging of coal, but his duties also required him to go upon the conveyor, see that everything was in order, and to attend to the general working thereof.

In the view we take of the case it will not be necessary to enter into a detailed statement or analysis of the evidence. Suffice it to say, that the evidence adduced by the plaintiff tended to show that at the time of the accident and for a period of about three weeks prior thereto, the steel cable then in use on the coal conveyor was roughened by usage, small strands of wire about 1-16 of an inch in length projecting; that this roughness of the cable gave it a tendency when in motion to climb on the pulleys and hence a greater tendency to come off; that by reason of its condition it did come off the pulleys; that it was in a dangerous and unsafe condition; that it was unfit for the use and purpose required of it; that it had been in use about ten months; that the life of a cable such as the one in question was about eight months; that the defendant had notice, as well as

actual knowledge, of the condition of the cable and promised the plaintiff that a new cable would be put in; that the plaintiff relying upon the promise of the defendant to put in a new cable continued in the performance of his duties; that on the day of the accident, while the plaintiff was engaged in the performance of his duties on a ship discharging coal, the cable came off the mauka four of the mauka series of eight pulleys, of which fact he was informed; that he immediately proceeded to the conveyor, in the meantime the engine, which propelled the cable, was stopped and the cable brought to rest; that upon reaching the place where the cable was off, the plaintiff, with the assistance of others, endeavored to replace it by using crowbars to pry it back into position, when, suddenly, the cable came off the remaining pulleys of this series, struck him with great force and hurled him to the wharf below, a distance of about twenty-five feet, whereby he sustained serious and permanent injuries.

We will assume for the purposes of this opinion that the evidence adduced by the plaintiff showed that the defendant was guilty of negligence in furnishing a defective cable for use on its coal conveyor.

At the close of the plaintiff's case the defendant moved for a nonsuit on the following grounds:  (1) That the plaintiff had failed to show that the defendant was guilty of any negligence; (2) that the proximate cause of the accident was the plaintiff's own act; (3) that the plaintiff was guilty of contributory negligence; (4) that the plaintiff assumed all the risk of the employment which resulted in the accident.

While the court below was of the opinion that the evidence adduced tended to show that the cable was defective, it held, however, that there was no evidence tending to show that the slipping of the cable from the pulleys at the time the plaintiff was endeavoring to restore it to its proper position was the result of the defective condition of the cable, and, therefore, granted the motion on the first ground.  As to the second, third and fourth grounds of the motion, the court held, and we think cor-

rectly, that they presented questions of fact for determination by a jury. As to the act of the plaintiff in attempting to replace the cable in the manner disclosed by the record, neither the court below nor can this court, as a matter of law, say that he was guilty of contributory negligence. The state of the evidence was such that different minds might honestly draw different conclusions from it, the questions thus presented being questions of fact clearly within the province of a jury to determine. *Neeley* v. *Southwestern Cotton Seed Oil Co.,* 64 L. R. A. 145, 151; *McGrath* v. *Texas & P. Ry Co.,* 60 Fed. 555; *George* v. *Clark,* 85 Fed. 608.

The defendant contends that the defective condition of the cable was not the proximate cause of the plaintiff's injury, because, after it came off the pulleys and was at rest, its defective condition ceased to operate or have anything to do with the events which followed, admitting, however, that when it came off the pulleys while in motion, if it had then struck the plaintiff and injured him, it might properly have been claimed that the defective condition was the proximate cause of the injury.

The plaintiff, of course, contends that the negligence of the defendant in continuing the use of the cable in its defective condition was the primary and proximate cause of the accident resulting in his injury, and that the defendant, therefore, is liable. Upon the evidence as disclosed by the record now before us this question as to the liability of the defendant should have been submitted to the jury. 21 Am. & Eng. Ency. Law (2d ed.), 508; 2 Labatt, Master and Servant, §805.

Actionable negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done. *Grand Trunk Railway Co.* v. *Ives,* 144 U. S. 408, 416; *Baltimore & P. R. Co.* v. *Jones,* 95 U. S. 439, 441; 1 Thompson on Negligence, §1.

If the defendant failed to furnish the plaintiff with a cable

reasonably safe for the use and purpose required (and the evidence tends to show that it did so fail), then it was guilty of negligence; and (as suggested by counsel for the defendant), if the cable, when it came off the pulleys while in motion, had struck the plaintiff and injured him, there could be no question as to his right to recover. The connection between the negligence and the injury would then have been direct, natural and continuous. Obviously, the negligence of the defendant would then have been the primary and proximate cause of the injury. The question now presented by the record, however, is, whether the negligence of the defendant in failing to furnish a reasonably safe cable was the proximate cause of the plaintiff's injury? In other words, was the injury the natural and probable consequence of the defective cable, and should it have been foreseen in the light of the attending circumstances? These, of course, are questions of fact, peculiarly within the province of a jury to determine.

In *Milwaukee & St. P. R. Co.* v. *Kellogg,* 94 U. S. 469, 474, Mr. Justice Strong said: "The true rule is that what is the proximate cause of any injury is ordinarily a question for a jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market-place. 2 Bl. Rep. 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is

the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. Here lies the difficulty. But the inquiry must be answered in accordance with common understanding. * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

It is fundamental, of course, that in an action founded upon the alleged negligence of a defendant, the negligence must be the proximate cause of the injury alleged; and it is also true, that where there is an "intermediate cause disconnected from the primary fault," such as an intervening human agency, "self-operating," which comes between the act of negligence and the injury, the negligence alleged is not the proximate cause of the injury, unless a reasonable and prudent person should have foreseen that his negligent act would set the intervening cause or human agency in motion. The crucial question, the pivotal fact, in the case at bar is, therefore, whether the

"primary fault," the negligence of the defendant, and the injury of the plaintiff are "naturally and probably connected with each other by a continuous sequence, or dissevered by a new and independent agency." This is not a question of science or legal knowledge, but a question of fact for a jury to "answer in the light of all the attending circumstances, and in accordance with common sense and understanding." 29 Cyc. 499, 500; Watson, Damages for Personal Injuries, §§32, 36, 58, 62, 177; *Southern R. Co.* v. *Webb,* 59 L. R. A. 109, 112; *City of San Antonio* v. *Porter,* 59 S. W. 922; *Shippers' Compress & Warehouse Co.* v. *Davidson,* 80 S. W. 1032; *Gudfelder* v. *Ry. Co.,* 207 Pa. 629; *Hampson* v. *Taylor,* 15 R. I. 83; *Mahogany* v. *Ward,* 16 R. I. 479, 483; *St. Joseph & G. I. R. Co.* v. *Hedge,* 44 Neb. 448, 458; *Purcell* v. *St. Paul City Ry. Co.,* 48 Minn. 134; *Missouri, K. & T. Ry. Co. of Texas* v. *Raney,* 99 S. W. 589.

In *Chicago R. I. & P. R. Co.* v. *Moore,* 43 L. R. A. (N. S.) 701, 706, a case analogous to the case at bar, the plaintiff was employed by the company as a fireman on one of its locomotive engines, which was sent out in a defective condition, and while out on the road got out of order. An examination disclosed that the "eccentric" was broken. It was the duty of the plaintiff to make emergency repairs while on the road. While engaged in making the repairs, the "straps," which fastened the "eccentric" to the axle, broke and injured the plaintiff. The court said (p. 706): "But in this case the repairs, under the circumstances, were made necessary by the negligence of the company, and enhanced the risk of the injury. The intervention of the act of the plaintiff between the negligence of the company and the injury should have been anticipated. When the engine broke, it became necessary to repair. The plaintiff could not go off and leave it. It should have been foreseen that he would attempt to remedy the defect and thereby incur the risk of injury. The defendant is charged with knowledge of the defect, and knowing the defect it must have known that

some sort of injury was likely to result. It must have known that if nothing worse happened the shaft would break, and that it would be necessary to repair it, and thereby the risk of injury would be enhanced. It is true, as argued by the defendant, the plaintiff could have gone off and left the engine, but it should have been so anticipated that he would not do so, and that he would attempt to repair it just as he did."

The case at bar is clearly distinguishable from those cases wherein the injury was the result of an independent intervening cause. *Pass Ry. Co.* v. *Trich,* 117 Pa. 390; *McFarlane* v. *The Town of Sullivan,* 99 Wis. 361; 29 Cyc. 499, 500; *Elliott* v. *Allegheny County Light Co.,* 204 Pa. 568; *Cole* v. *German Sav. & L. Soc.,* 63 L. R. A. 416.

The questions presented by the evidence in the case at bar, as disclosed by the record before us, and which should have been submitted to the jury for determination, are, in effect, whether it was the duty of the defendant to have foreseen that the cable, by reason of its defective condition, would come off the pulleys; whether the plaintiff would thereupon attempt to restore it to its proper position; and whether the injury sustained by the plaintiff was the natural and probable consequence of the defendant's negligence. In other words, whether or not the intervening cause—the human agency—was set in motion by the defendant's negligence.

The plaintiff also claims that his injuries were caused by the lack of a guard rail and platform at the head of the conveyor—the place where the accident occurred.

It appears from the record that the plaintiff was fully aware of the condition of the conveyor when he accepted employment thereon and at all times during his employment, and that he had never made any complaint concerning it. There is nothing in the evidence tending to show that he continued in his work relying upon any promise to change the condition of the conveyor in the respect mentioned. Whatever the risks were, we

think under the circumstances disclosed by the record, the plaintiff assumed them.

The plaintiff having made out a *prima facie* case was entitled to have it submitted to the jury.

The judgment of nonsuit is reversed, a new trial is granted and the cause remanded with directions to deny the motion for nonsuit.

*E. A. Douthitt (Douthitt & Coke* on the brief) for plaintiff.

*C. R. Hemenway, I. M. Stainback* and *W. L. Stanley (Smith, Warren, Hemenway & Sutton* and *Holmes, Stanley & Olson* on the brief) for defendant.

### DISSENTING OPINION OF PERRY, J.

While concurring in what is said in the foregoing opinion on the subject of the assumption by plaintiff of the risks incident to the lack of a guard rail and a platform at the head of the coal conveyor, I respectfully dissent from the view that the question of proximate cause should have been submitted to the jury and from the conclusion that a nonsuit was incorrectly ordered.

There is no doubt that what is the proximate cause of an injury is ordinarily a question for a jury; but when the facts are all undisputed and the inferences necessary to sustain the plaintiff's case are not legally deducible from those facts, the question is solely one of law for the court. *Teis* v. *Smuggler Mining Co.,* 158 Fed. 260, 269; *Jennings* v. *Davis,* 187 Fed. 703, 713; *Clark* v. *Wallace,* 51 Colo. 437, 439. In the case at bar the question was, in my opinion, one of law for the court.

There was, it is true, evidence tending to show that the cable in its worn and frayed condition had a "tendency to climb" on the pulleys and thus to leave them and that the defendant was therefore guilty of negligence in continuing the use of the cable; and if in leaving the pulleys for this reason the cable had caused injury to an employee without any fault of the latter, the negligence would clearly have been the proximate cause of the injury and the defendant would have been liable.

But although in the instance under consideration the cable did (always assuming, as we must, that the plaintiff's evidence was true) leave four of the pulleys in consequence of its defective condition, no one was injured thereby.   That fact is beyond dispute.   The cable was stopped and it was only after it was entirely at rest that the plaintiff attempted to replace it behind the pulleys and in the attempt received the injuries complained of.   There is not the slightest evidence to support a finding that the defective condition of the cable contributed in any degree to its leaving the second set of four pulleys or to its slipping from the crowbars then being used to restore it to its proper place.   For aught that is made to appear to the contrary by the evidence, the slipping of the cable from the second set of pulleys and its hurling of the plaintiff to the dock below may have been either a pure accident or the result of plaintiff's own negligence.   The burden was upon the plaintiff to make a *prima facie* showing that the fall was caused by some negligence of the defendant and was not a mere unavoidable accident.

The proximate cause of an injury may be distant in time and in place, it may operate through successive instruments, but to be such it must appear that the injury was the natural and probable consequence of the negligence or wrongful act and that it ought to have been foreseen in the light of the attending circumstances.   *R. R.* v. *Kellogg,* 94 U. S. 469, 474.   "A natural consequence of an act · is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it.   A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it."   *Cole* v. *German Savings & Loan Soc.,* 124 Fed. 113, 115. In a general sense every act or event leads up to and is the cause of some subsequent act or event and, inversely, every act or event is in some degree influenced by and is the consequence of some earlier act or event.   But in that broad sense causes and consequences are unknown in the law of negligence.   Certainty in the law, justice and expediency require the imposition of

narrower limits in the field of recovery and it is therefore well established that "a prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury." 29 Cyc. 496; *R. R.* v. *Columbia,* 65 Kan. 390, 399. In the case at bar there was no causal connection, within the meaning of the rule, between the defendant's negligence in using the defective cable and the plaintiff's injury. With the bringing of the cable to rest, the continuity in the chain of events was broken. As far as is disclosed by the evidence, either a pure accident or the plaintiff's negligence, following the plaintiff's act in attempting to replace the cable, was the proximate cause of the injury. The defendant's negligence and the consequent leaving of the first four pulleys by the cable merely furnished the condition or gave rise to the occasion by which the injury was made possible and any finding by a jury to the contrary would find no support in the evidence. So also did the defendant's employment of plaintiff, plaintiff's acceptance of that employment and defendant's erection and maintenance of the coal conveyor give rise to the occasion and yet none of these could properly be regarded as the proximate cause of the injury.

It seems to me that the jury would not be justified in declaring that plaintiff's fall was the natural and probable consequence of the continued use of the defective cable, in other words, in charging the defendant with the duty of foreseeing the fall, any more than in holding that it should have foreseen that plaintiff in hastening to the spot where the cable was off the pulleys would stumble and fall to the dock below or that the man in charge of the engine in attempting to stop the machinery and thus bring the cable to rest would have his hand caught in the machinery, requiring amputation of a part of the arm.

The plaintiff, who was a skilled engineer and machinist and

was entirely familiar with the coal conveyor and its operation, in accepting the employment assumed its ordinary risks. *Kohn* v. *McNulta,* 147 U. S. 238, 241; *Tuttle* v. *R. R.,* 122 U. S. 189, 195, 196. As far as the evidence discloses this was one of them. It is not made to appear that the accident could not as well have happened with a non-defective cable at rest as with a defective cable at rest or, in other words, that the defective condition contributed to the accident. The burden was on the plaintiff throughout to establish a *prima facie* case.

Much reliance is placed by plaintiff upon the case of *R. R.* v. *Moore,* 43 L. R. A., N. S., 701, decided by the supreme court of Oklahoma. Possibly that case can be distinguished in its facts from that at bar. The engineer, whose main duty was to operate the engine on the road, was said by the court to be under a duty to repair "only in cases of emergencies such as the company by reasonable care could not provide against"; and the court in its opinion (pp. 705, 706) expressly made the reservation that, "neither could an employee regularly engaged in repairing the machinery of the company recover for an injury received as the one complained of here, however negligently the necessity for repairs might have been caused, because it was his regular business to repair and the danger in his employment was exactly the same, whether the repairs were made necessary by negligence or accident". In the case at bar the undisputed evidence is that the plaintiff was regularly engaged in repairing the machinery of the conveyor, just as he was regularly engaged in superintending its operation. It was his regular business to repair, whether the repairs were made necessary by accidents resulting from negligence or by causes not involving negligence; and the danger in his employment was exactly the same in the one class of repairs as in the other. The case at bar would seem to fall, not within the principle of the actual decision in the *Moore* case, but within the principle of the reservation. If, however, the cases are not thus distinguishable and if the court in the *Moore* case goes to the extent of holding that upon facts

such as exist in the case at bar the defendant's negligence was the proximate cause of the injury, it does not appeal to me as sound and I respectfully decline to follow it.

In my opinion the plaintiff failed to show that the defendant was guilty of any negligence which could have been properly found by the jury to have been the proximate cause of the injuries complained of and the motion for a nonsuit was properly granted.