No. 19,412.

EUGENE MILLER and IDA MILLER, *Appellees,* V. ARMOUR
& COMPANY and THE ARMOUR CAR LINES, *Appellents,* et al.

SYLLABUS BY THE COURT.

DEATH—*Injuries Received in Car Repair Shops—Proximate
Cause—Accident Not a Result of Negligence—No Negligence
Shown.* Robert Miller was injured while working in car re-
pair shops at a forge, engaged in heating rivets used in
building and repairing steel underframes for cars. The forge
was situated midway between two railroad tracks fourteen
feet apart. One of these tracks was used for placing thereon
the steel underframes being built or repaired. On the other
track cars were placed while the superstructure was being
repaired. There was no canopy over the forge to protect the
person working there from falling objects. At the time of
the injury a car was on the last-mentioned track, by the side
of the forge, placed there for repairs. The material compos-
ing the roof of any car being repaired in that part was torn
off and dropped by the side of the car. Miller had worked
at this place and under these circumstances for about two
months. Another workman, under the direction of their com-
mon employer, went to the top of this car and commenced to
remove the sheet iron and tin from the roof. He did this
with an iron or steel bar, about three or four feet long, and
weighing about ten to fifteen pounds. One end of this bar
had claws for pulling nails. The other end was pointed.
This workman removed some nails with the claw end of the
bar, then reversed it, struck with the pointed end, intending
to drive the bar under the metal composing the roof, but
missed and struck on top of the metal. The bar slipped from
his hands, descended at an angle of about forty-five degrees,
struck Miller in the side and penetrated his body. From the
injury received he soon died. The employer can not be held
liable upon the ground of negligence in failing to provide a
canopy for the protection of those working at the forge.

Appeal from Wyandotte district court, division No.
3; HUGH J. SMITH, judge. Opinion filed April 10, 1915.
Reversed.

*C. Angevine, J. K. Cubbison,* and *William G. Holt,* all of Kansas City, for the appellants.

*James F. Getty,* of Kansas City, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is an action brought by Eugene Miller and Ida Miller, father and mother of Robert Miller, against Armour & Company, Armour Car Lines, Luther L. Lucky, and Garrett E. Groomer, for negligently causing the death of Robert Miller. Judgment was rendered in favor of the plaintiffs against Armour & Company and Armour Car Lines, for $5000. Defendant Lucky interposed a demurrer to the evidence as to him, which demurrer was sustained. The jury returned a verdict in favor of defendant Groomer. Armour & Company and Armour Car Lines appeal.

The petition, among other things, alleges that the defendants, Armour & Company and Armour Car Lines, maintained and operated a car repair shop, where large numbers of men were employed in repairing and rebuilding cars; that in the shop were a number of railroad tracks running parallel with each other; that defendant Luther L. Lucky was the foreman or superintendent of the shop; that in the shop was a forge, permanently placed, used for the purpose of heating rivets for building and repairing steel bottoms, floors, and supports of cars; that these defendants "negligently and in disregard of their said duty failed to place over and above said forge and the space about the same where an employee was obliged to stand when working on and about said forge, a canopy, cover, screen or other means of protection from being struck and injured by tools or other objects falling from the roofs of the cars while being repaired on said tracks; . . . that at said time Armour & Company, Armour Car Lines and Luther L. Lucky had placed on the top or roof of said car the defendant Garrett E. Groomer, with directions to remove and repair certain tin and

sheet iron that was placed thereon, and said Groomer while in the performance of said work carelessly permitted an iron or steel bar, which he was using, to fall or drop from the roof of said car, which, by reason of Armour & Company, Armour Car Lines and Luther L. Lucky negligently failing to furnish a canopy, cover, screen or other means of protection to said Robert Miller while working on or about said forge, struck said Robert Miller, inflicting such injuries upon him that he died."

The facts to support plaintiffs' claim, which the evidence tends to prove, were as follows: Within the grounds, and a part of the plant of Armour & Company, in Kansas City, Kan., were shops for repairing railroad cars, occupying grounds about 128 feet wide by 280 feet long. In these shops were a number of railroad tracks running parallel with each other. The roofs of the buildings were supported by a number of posts, and throughout was a system of pipes, conveying compressed air used for mechanical purposes in repairing cars. Running down one of these posts to within about a foot or 18 inches of the floor, between tracks known as 14 and 15, was an air line pipe. From this point the pipe ran about at right angles from the post, through an elbow, a distance of about three feet, where it was attached to a forge used for heating rivets. This attachment was made by a metal piece called a union. This forge, when so attached, was located half way between tracks 14 and 15, and was about 16 or 20 inches square, and about 24 or 30 inches high. It was often detached and moved to other parts of the shop, where it was used for the same purpose. These tracks were about 14 feet apart. Track 15 was used for building and repairing steel underframes for cars. These underframes were made by riveting together pieces of steel. Rivets were heated in this forge, taken from the forge by the rivet heater to the underframe, placed in the holes, and by the other workmen riveted with an air

hammer.   The underframe was placed alongside and convenient to the forge.   On track 14 were placed cars on which repairs were made to the superstructure.   The covering was often torn off and dropped by the side of the car to the floor below.   The materials dropped were the metal covering, timbers, boards, and nails, composing the roof, or whatever part of the car was removed. Around the car being repaired was a 14-inch plank, suspended from the roof of the building, about three feet below the top, and about 18 inches from the side, of the car, and on this platform the men stood when working on the car.   There was no canopy or covering over or around the forge.   The distance from the center of the forge, or post to which it was attached, to the nearest rail of either track 14 or 15 was seven feet. When a car was on track 14 its sides extended two feet over the rail, leaving five feet between the center of the forge and the side of the car.   On one occasion a block of wood was thrown out of or fell from a car and hit a bucket carried by one of the workmen.   This was not at this forge.   About five o'clock in the afternoon on the day before the injury occurred car No. 8055 was set on track 14, by the side of this forge, to be repaired. On this day there were flurries of snow.   The temperature was below freezing all day and all night.   On the morning of the accident, somewhere near seven o'clock, defendant Groomer was directed to go on the top of this car and remove the metal roofing.   This roofing was removed with an iron bar about four feet long and an inch or an inch and a quarter thick, weighing from 10 to 15 pounds.   On one end of the bar were claws for pulling nails.   The other end was sharpened.   Snow had been swept from the roof of this car.   Groomer wore a pair of cloth gloves, which had become somewhat damp.   Using the claw end of his bar, he raised a portion of the metal roofing, pulled out several nails, reversed the bar, struck at the roofing, intending to force the bar under the metal, but missed, and struck

on top of the metal. The bar slipped, went out of his hands downward at an angle of forty-five degrees, and struck Robert Miller in the side, penetrating his body and causing his death. Robert Miller was then standing warming his hands at this forge. At the time of his death he had been heating rivets at this forge about two months. He was then about eighteen years old.

Was there negligence on the part of defendants Armour & Company and Armour Car Lines in not putting a canopy or covering over this forge to protect those working there from falling objects?

The boards, metal, nails, bolts, and other material of which the roof or sides of a car might be composed, dropped to the floor by the workman on the car, were not dangerous, nor likely to cause injury to any one who might be standing or working at or near the car, unless carelessly and negligently dropped. Any of this material thrown around over the shop by the workmen might be expected to cause injury, but it was not to be anticipated that these workmen would do anything but drop the material by the side of the car.

The entire situation did not indicate any danger, except such as was necessarily incident to the character of the work being carried on. Danger is always present. Accidents are liable to happen anywhere. Some accident, unforeseen, unanticipated, is liable to happen, by which one may be injured at any time. In factories where large numbers of men are employed, injuries will occur. The employer must exercise reasonable care to prevent those injuries which may be anticipated because of the character of the work in which his employees are engaged. Where an employer has exercised reasonable care in providing for his employees safe places in which to work, and safe instruments for them to work with, he has discharged his duty. When he has done this, and injury by accident occurs, he is not liable therefor.

What was the proximate cause of the death of Robert Miller? Was it the absence of a canopy or other pro-

tection over or around him, or was it the blow struck by Groomer, his missing his aim, the bar slipping from his hands, and, propelled by the force of that blow, striking Miller in the side? It was this blow with the bar that caused Robert Miller's death. If the bar had fallen or been dropped from the top of the car on which Groomer was working, Miller would not have been injured.

It is argued that Miller would not have been injured if there had been a protection around him. That is true. Neither would he have been injured if the car had not been there. Neither would he have been injured if Groomer had aimed his bar properly. Neither would he have been injured if Groomer had held the bar. Neither would he have been injured if the bar had been directed at any other angle. Neither would he have been injured if he had not been at the forge where he was. The absence of a canopy produced a condition which made it possible for the accident to occur. This condition was not the cause of the injury. That was caused by the bar, driven by Groomer, slipping from his hands. (*Gas Co. v. Dabney,* 79 Kan. 820, 102 Pac. 488; *Eberhardt v. Telephone Co.,* 91 Kan. 763, 767, 139 Pac. 416.) Was it negligence to produce this condition? What reason would have led to the conclusion that the bar propelled by Groomer would miss its mark and escape his hold, as it did, and in its course strike Robert Miller and cause his death? What foresight would have guessed at such result? What prudence would have avoided it? Certainly none, except such as to have restrained Groomer from the use of the bar. We may not say, however, that this extreme of caution is required by law. Such a rule would paralyze human effort and action on all lines. All industrial operations would stop. Employers would become insurers of the safety and lives of their employees. The law does not and can not go to this extent. To support this, see the reasoning in *Cleghorn v. Thompson,* 62 Kan. 727, 733, 64 Pac. 605.

Harper v. Railway Co.

The jury returned a verdict in favor of Groomer, finding that he was not guilty of negligence. His act caused the injury. If he was not guilty of negligence, no one was guilty of negligence, and no one is liable for the death of Miller.

Under the facts established by the evidence, giving them the most favorable interpretation in favor of the plaintiffs, we are of the opinion that Robert Miller met his death by accident, for which no one is liable. We are therefore of the opinion that the defendants' demurrer to the evidence should have been sustained, and judgment should have been rendered in favor of the defendants. The judgment of the district court is reversed, and this cause is remanded, with instructions to sustain the demurrer to the plaintiffs' evidence, and enter judgment in favor of defendants Armour & Company and Armour Car Lines.